UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABDOLPH A. LÉGER

Write the full name of each plaintiff.

No. ____________
(To be filled out by Clerk's Office)

-against-

# COMPLAINT
(Prisoner)

Do you want a jury trial?
☒ Yes ☐ No

JOHN HECHT, MARIO ROMANO, JEREMY SALAND, KEENAN A. ADAM-EDWARD, BRIAN MCALLISTER, ROSARION SAINTELME, NICHOLAS A ORTEGA, CEASAR A REYAS, CHU PHILLIS, DINEEN RIVIEZZO, ALEX NEUMAN, HUMBERTO J DELGADO

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

RECEIVED
APR 09 2025
PRO SE OFFICE

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☒ Violation of my federal constitutional rights

☐ Other: N/A

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

ABDOULAYE A. LEGER
First Name Middle Initial Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

1132400335 ; 15520696R
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

OBCC 1600 HAZEN STREET E.ELMHURST NY 11370
Current Place of Detention

OBCC 1600 HAZEN STREET E.ELMHURST NY 11370
Institutional Address

BRONX, NEW YORK, NEW YORK 11370
County, City State Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☒ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☐ Other: N/A

## IV.B DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: BRIAN M. MCALLISTER
First Name / Last Name / Shield #
CHIEF COURT CLERK
Current Job Title (or other identifying information)
320 JAY STREET NEW YORK, 11201
Current Work Address
BROOKLYN NEW YORK, NEW YORK 11201
County, City / State / Zip Code

Defendant 2: ROSARION SAINTELME TAX#959960
First Name / Last Name / Shield #
NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK NEW YORK 11232
County, City / State / Zip Code

Defendant 3: NICHOLAS A. ORTEGA TAX #97539
First Name / Last Name / Shield #
NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11232
County, City / State / Zip Code

Defendant 4: CEASAR A REYAS TAX#952159
First Name / Last Name / Shield #
SERGENT NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11232
County, City / State / Zip Code

IV.A DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: JOHN HECHT JUDGE
First Name Last Name Shield #
CURRENT PRESIDING JUDGE
Current Job Title (or other identifying information)
320 JAY STREET
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11201
County, City State Zip Code

Defendant 2: MARIO ROMANO 18B
First Name Last Name Shield #
2ND LAWYER
Current Job Title (or other identifying information)
8118 13TH AVE BROOKLYN
Current Work Address
BROOKLYN, NEW YORK NEW YORK 11228
County, City State Zip Code

Defendant 3: JEREMY SALAND LAWYER
First Name Last Name Shield #
1ST LAWYER (FORMER DEA)
Current Job Title (or other identifying information)

Current Work Address
BROOKLYN NEW YORK 11201
County, City State Zip Code

Defendant 4: DINEEN RIVIEZZO JUDGE
First Name Last Name Shield #
JUDGE
Current Job Title (or other identifying information)
320 JAY STREET
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11201
County, City State Zip Code

## IV.C DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: KEENAN A. ADAMS-FERNARD TAX#953617
First Name Last Name Shield #
SERGEANT NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11232
County, City State Zip Code

Defendant 2: ALEX NULMAN TAX#943117
First Name Last Name Shield #
LIEUTENANT NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11232
County, City State Zip Code

Defendant 3: HUMBERTO J. DELGADO TAX#968523
First Name Last Name Shield #
NEW YORK POLICE OFFICER
Current Job Title (or other identifying information)
72 PRECINT 830 4TH AVE
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11232
County, City State Zip Code

Defendant 4: CHU PHYLLIS JUDGE
First Name Last Name Shield #
JUDGE
Current Job Title (or other identifying information)
320 JAY STREET
Current Work Address
BROOKLYN, NEW YORK, NEW YORK 11201
County, City State Zip Code

V.A STATEMENT OF CLAIM

Place(s) of occurrence: BROOKLYN, NEW YORK

Date(s) of occurrence: APRIL 1 2022

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

- SUMMARY: I ABDOLPH LEGER WILL BE PRESENTING SIX CONSTITUTIONAL VIOLASTIONS (4, 5, 6, 8, 13, 14) AMENDMENTS RIGHTS THAT OCCURED 17 OCCASIONS STARTING APRIL 1ST 2022; BECAUSE THE CASE IS STILL ON GOING AT PRESENT (2025); IN BROOKLYN, NEW YORK. DUE TO THE SUITE TIME RESTRAINTS I WILL STATE THE 1ST VIOLATION TO STAY WITHIN TIME REQUIRMENTS.
- 4.1.22 FEW HOURS BEFORE MIDNIGHT I (PETITIONER) WAS TERRY STOPPED BY OFFICER RASOION SAINTELME #959960 OFFICER SAINTELME INSTRUCTED ME TO ROLL DOWN ALL WINDOWS; UPON APPROCH I POLITLY ASKED THE OFFICER WHY I WAS STOPPED, HE RESPONDED "BECAUSE OF EXCESSIVE TINT AND COVERED LICENCE PLATE (PLATE COVED IN CLEAR CLEAN, PLASTIC)" PEOPLE V MCBRIDE 2023 NYLJ LEXIS 2060, CLEAR PLASTIC COVER IS NOT A REASON FOR STOP. OFFICER SAINTELME REQUESTED PROPER DOCUMENTATION; AS I RETRIVIED MY DOCUMENTATION FROM MY CENTER CONSOLE AND GLOVE COMPARTMENT OFFICER SAINTELME FLASHED AROUND THE VEHICAL. OFFICER SAINTELME TOOK MY PROPER STATE ISSUE I.D & PROOF OF INSUR-

V.B STATEMENT OF CLAIM

Place(s) of occurrence: BROOKLYN, NEW YORK

Date(s) of occurrence: APRIL 1, 2022

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

-ANCE, VEHICLE REGISTRATION BACK TO HIS SQUAD CAR AS I WAITED PACIANTLY; ADDITIONAL SQUAD CARS ARR-IVED SURROUNDING MY VEHICAL. OFFICER SAINTEL-ME RETURNED AND ASKED "WHERE IS THE BLACK BOX"? SLIGHTLY STARTLED AND CONFUSED I HANDED OVER MY IPOD. OFFICER SAINTELME OPENED MY VEHICAL DOOR AND DEMANDED "GET OUT THE VEHICAL"; AND ESCORTED ME TO THE REAR SURROUDED BY A NUMBER OF OFFICERS THAT PATTED ME, AS SAINTELME AND ANOTHER OFFICER SEARCHED MY CAR. PEOPLE V. CHRISTOPHER BAKSH (IND. NO. 1298/10) JANUARY 8, 2014 113 A.D.3d 626; SLIP OP 112 2012-05561 OVERVIEW... [2] 'THE OFFICERS SEARCH OF THE VEHICLE WAS UNLAWFUL BECAUSE IT DID NOT FIT WITHIN THE EXCEPTION TO GENERAL RULE THAT PROBABLE CAUSE WAS REQUIRED TO SEARCH A VEHICAL ONCE SUSPECT HAD BEEN REMOVED AND PATTED DOWN WITHOUT INCIDENT; ... SHE DID NOT PRE-CEIVE ACTUAL AND SPECIFIC THREAT TO HER OR TO OTHER OFFICERS SAFTY... CIRCUMSTANCES KNOWN TO POLICE AT TIME OF SEARCH DID NOT RISE TO LEVEL

V.C STATEMENT OF CLAIM

Place(s) of occurrence: BROOKLYN, NEW YORK

Date(s) of occurrence: APRIL 1, 2022

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

OF PROBABLE CAUSE) I ASKED AN OFFICER "DO I NEED TO CALL A LAWYER"? OFFICER OF ATHORITY CONTINUED TO ASK ME QUESTION "DO YOU HAVE SOMETHING ILLEGAL"? OFFICER SAINTELME AGGRESSIVELY "WHERE IS THE BLACK BOX"? I CALMLY ASK "CAN I PLEASE GET MY PHONE SO I CAN CALL A LAWYER"? OFFICER SAINTELME PLACE HANDCUFF ON ME, AND PUT ME IN THE SQUAD CAR NEXT TO HIS CAR PARTNER. I ASKED "ARE YOU GUYS GOING TO KILL ME"? AT NO POINT DO THE OFFICER CHECK MY CAR FOR TINT, NOR DID I CONCENT TO A VEHICLE SEARCH. NO CRIME WAS COMMITED. NO EVIDANCE WAS PRODUCED. OFFICER SAINTLME DID NOT ARTICULATE THREAT OR PROBABLE CAUSE OF ARREST; VIOLATION OF 4TH AMENDMENT. WHEN I WAS BOOKED ALL PERSONAL EFFECTS WERE NOT LOGGED, SPECIFFICALLY MY WATCH AND JEWLRY. THE OFFICERS CAMRAS CAN ATTEST TO MY DESCRIPTION OF OCCURANCES ALONG WITH OFFICER NICHOLAS ORTEGA #971589.

OFFICER CESAR A REYES TAX # 952159, ALSO ON PREMISSES SERGEANT KEENAN A ADAMS-EDWARD TAX # 953617, LIEUTENANT ALEX NULMAN TAX#943617 AND OFFICER HUMBERTO J. DELGADO TAX #968523. THEIR WAS MORE OFFICER ON THE PREMISSES THAT I UNABLE TO RECALL. BODY CAMERA CAN IDENTIFY THE MANY OTHER OFFICER INVOLED.. AGAIN..

AT NO POINT OF TERRY STOP & ARREST WAS THE WINDOWS TESTED FOR EXCESSIVE TINT.

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

THE ON GOING CASE HAS EXHAUSTED MY MEAGER FINANCES, MY CAR AND HOME. THE TIME LOSS HAS DEST-ROYED MY RELASTIONSHIP WITH MY WIFE OF 13 YEARS (COMMON LAW); COST OF 1ST LAWYER, BAIL, SO ON... ANXIEY, DEPRESSION, INSOMNIA AND FEAR OF OFFICERS, LAWYERS, JUDGES...

VI. RELIEF

State briefly what money damages or other relief you want the court to order.

IMMEDIATE DISMISSAL OF ALL CHARGES; DUE TO THE UNMENTIONED CONSTITIONAL VIOLATIONS AND THE ON GOING CASE I'V YET BEEN ABLE TO CALC-ULATE ALL EXPENSES, STRESSES AND ALL IT WOULD TAKE TO GET MY LIFE BACK IN PROPER ORDER.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

MARCH 17, 2025 — Dated

LEGER — Plaintiff's Signature

ABDOLPH — First Name | A — Middle Initial | LEGER — Last Name

OBCC 1600 HAZEN STREET E. ELMHURST NY — Prison Address

BRONX, NEW YORK — County, City | NEW YORK — State | 11370 — Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: 3/28/25

investigative stop short of an arrest of an individual where there is reasonable suspicion to believe that a person is engaged in criminal activity. The threshold for a *Terry* stop is significantly lower than that required for an arrest. All that is necessary is reasonable suspicion that "a person has been, is, or is about to be engaged in criminal activity."[3] A *Terry* stop requires a particularized suspicion of criminal activity.[4] Police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion."[5]

While examining a roving patrol border stop, Chief Justice Burger explained the particularized suspicion concept:

> The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deduc-

---

Latta v. Keryte, 118 F.3d 693 (10th Cir. 1997) (initially approaching apparently intoxicated motorist parked on the side of the road was a mere encounter; no seizure occurred until he was later stopped at a roadblock). In one of the few cases on point, a court of appeals ruled that the seizure does not occur until the driver of the pursued vehicle submits to the police's show of authority and stops his vehicle. U.S. v. Washington, 12 F.3d 1128, 40 Fed. R. Evid. Serv. 195 (D.C. Cir. 1994) (following California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), which held that no seizure occurs for Fourth Amendment purposes where a pedestrian does not submit to an officer's show of authority).

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] U.S. v. Hensley, 469 U.S. 221, 227, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (citation omitted).

[4] U.S. v. Coleman, 969 F.2d 126 (5th Cir. 1992). As cited in *Coleman*, U.S. v. Basey, 816 F.2d 980 (5th Cir. 1987), states the same proposition negatively. For example, police may not stop every vehicle for several miles after a crime has been discovered. There is no particularized suspicion that any of these vehicles was involved in criminal activity.

[5] *Terry v. Ohio*, 392 U.S. at 21.

WESTLAW

View New York Official Reports version

192 A.D.3d 920
Supreme Court, Appellate Division, Second Department, New York.

People v. Rivera
Supreme Court, Appellate Division, Second Department, New York. March 17, 2021 192 A.D.3d 920 143 N.Y.S.3d 667 2021 N.Y. Slip Op. 08256 *(Approx. 4 pages)*

v.

Francisco RIVERA, appellant.

2018-06246
(Ind. No. 1308/15)
Argued—February 22, 2021
March 17, 2021

**Synopsis**

**Background:** Defendant was convicted, upon guilty plea, in the Supreme Court, Queens County, Barry Kron, J., of criminal possession of a weapon in the second degree after the Supreme Court, Steven W. Paynter, J., denied, following a hearing before the Supreme Court, Thomas A. Demakos, J.H.O., defendant's omnibus motion to suppress physical evidence and his statement to law enforcement officials. Defendant appealed.

**Holding:** The Supreme Court, Appellate Division, held that police officers' decision to impound defendant's **vehicle**, as basis for warrantless **inventory** search, was unlawful.

Reversed, guilty plea vacated, motion granted, and remitted with directions.

**West Headnotes (3)**

Change View

1 Searches and Seizures
When the driver of a **vehicle** is arrested, the police may impound the car, and conduct an **inventory** search, where they act pursuant to reasonable police regulations relating to **inventory** procedures administered in good faith. U.S. Const. Amend. 4.

1 Case that cites this headnote

| | |
|---|---|
| 349 | Searches and Seizures |
| 349I | In General |
| 349k60 | Motor **Vehicles** |
| 349k66 | **Inventory** and impoundment; time and place of search |

2 Automobiles
Searches and Seizures
Police may impound **vehicle** without warrant in interests of public safety and as part of community caretaking functions. U.S. Const. Amend. 4.

1 Case that cites this headnote

| | |
|---|---|
| 48A | Automobiles |
| 48AVII | Offenses |
| 48AVII(B) | Prosecution |
| 48Ak349.5 | Search or Seizure Consequent to Arrest, Stop or Inquiry |
| 48Ak349.5(5) | Object, Product, Scope, and Conduct of Search, Seizure, or Inspection |
| 48Ak349.5(12) | Time and place; impoundment, **inventory**, or booking |

| | |
|---|---|
| 349 | Searches and Seizures |
| 349I | In General |
| 349k60 | Motor **Vehicles** |
| 349k66 | **Inventory** and impoundment; time and place of search |

Automobiles

the **policy** for impounding and searching a **vehicle**, or whether the officer complied with that **policy** when she conducted the **inventory** search of the defendant's **vehicle** (*see People v. Tardi*, 28 N.Y.3d at 1078, 44 N.Y.S.3d 366, 66 N.E.3d 1084; *People v. Weeks*, 182 A.D.3d at 541, 122 N.Y.S.3d 347; *People v. Leonard*, 119 A.D.3d at 1237, 991 N.Y.S.2d 159).

Accordingly, the impoundment of the defendant's **vehicle** was unlawful, and the physical evidence that was recovered from the **vehicle** during the **inventory** search subsequent to that impoundment must be suppressed as fruits of the unlawful impoundment ***669* (*see e.g. People v. Hickey*, 172 A.D.3d 745, 747–748, 98 N.Y.S.3d 287).

The parties' remaining contentions either are without merit or need not be reached in light of our determination.

CHAMBERS, J.P., HINDS–RADIX, LASALLE and IANNACCI, JJ., concur.

**All Citations**

192 A.D.3d 920, 143 N.Y.S.3d 667, 2021 N.Y. Slip Op. 08256

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw. © 2023 Thomson Reuters Privacy Statement Accessibility Supplier Terms Contact Us 1-800-REF-ATTY (1-800-733-2889) Improve Westlaw/Report an error

THOMSON REUTERS

explained in different words but with largely consistent themes. Probable cause has been defined as follows:

(1) At the moment the arrest was made, "the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense."[19]

(2) "Probable cause [means that the officer acted] upon a belief, reasonably arising out of circumstances known to the seizing officer . . . The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."[20]

All facts that are relevant to the decision as to whether probable cause exists to arrest a specific individual or search a particular place may be considered, but not all factors carry equal weight.[21] For example, that an individual has a reputation of engaging in certain kinds of activities does not provide a reason

---

received a call from the emergency dispatcher stating that hospital staff had reported that the individual was suicidal and that there was a clinical certificate requiring that she be returned to the hospital. *See, Machan v. Olney*, 958 F.3d 1212, 377 Ed. Law Rep. 8 (6th Cir. 2020). Police officer assigned to a middle school had probable cause to believe that a student was dangerous to herself, as required by the Fourth Amendment, to take the student to the hospital for a mental evaluation, over the objection of the student's father, and, without the father's consent, authorize a blood draw as part of the hospital's standard procedure for mental evaluations, where the principal told the officer that student told her she had been contemplating suicide for about a month, and that she worried about hurting herself with guns and kitchen knives in her home.

[19] *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar v. U.S.*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

[20] *Carroll v. U.S.*, 267 U.S. 132, 148, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925). In Carroll, officers attempted to negotiate a purchase of illegal liquor from, among others, Carroll and Kiro in September. Although the deal fell through because the two failed to appear with the liquor when they said they would, the officers learned a great deal about their bootlegging activities. Apparently they sold their liquor in Grand Rapids and employed a particular automobile. In October, the same persons were spotted on the highway headed towards Detroit from Grand Rapids, in the same automobile. Detroit was known as a center for the distribution of bootleg liquor. The officers attempted to follow the vehicle but lost it. Finally, in December, the same vehicle with the same two people was found on the same road coming from the direction of Detroit and proceeding towards Grand Rapids. Convinced that the two were carrying liquor, the car was stopped and searched. The Court held that probable cause existed to stop and search the vehicle. *Carroll v. U.S.*, 267 U.S. 132, 159–60, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925).

[21] "We do not hold that the officer's knowledge of the petitioner's physical

The People of the State of New York, Respondent, v. Daryl Lee Ruffin, Also Known as Darryl Ruffin, Appellant
Supreme Court of New York, Appellate Division, Second Department
133 A.D.2d 425; 519 N.Y.S.2d 410; 1987 N.Y. App. Div. LEXIS 49904

[NO NUMBER IN ORIGINAL]
September 21, 1987

**Judges:** Bracken, J. P., Kunzeman, Kooper and Spatt, JJ., concur.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant appealed the judgment of the County Court, Nassau County (New York), which was entered on defendant's guilty plea, that convicted defendant of burglary in the second degree. The trial court denied those parts of defendant's omnibus motion that were to suppress statements made by him to the police and to suppress physical evidence. A search of defendant's bag was not incident to a lawful arrest because defendant was arrested and handcuffed outside patrol car and bag was located inside the car; defendant was unable to gain possession of a weapon or destroy evidence in the bag.

**OVERVIEW:** A police officer saw defendant riding a bicycle with a paper bag hanging over the handlebars and a duffel bag slung over his shoulder. The officer stopped defendant to inquire as to his reason for being in the area. The officer noticed that the paper bag contained electronic equipment. Defendant stated he was returning home from work. He accompanied the officer to his alleged place of employment, after which it was confirmed that defendant did not work there. The officer put defendant's duffel bag in the patrol car, and defendant was then placed under arrest. A search of the duffel bag revealed burglar's tools. The court reversed the trial court's judgment that convicted defendant of burglary, and granted defendant's motion to suppress the evidence in the duffel bag. The court held that the officer's action in stopping defendant was justified at its inception. However, the search of the duffel bag was not incident to a lawful arrest. Defendant was arrested and handcuffed outside the patrol car, with the duffel bag inside the car. As such, the officer had no reasonable belief that defendant could gain possession of a weapon or be able to destroy evidence located in the duffel bag.

**OUTCOME:** The court reversed the trial court's judgment that convicted defendant of burglary in the second degree, and vacated defendant's guilty plea. The court also granted defendant's omnibus motion that was to suppress physical evidence, to the extent of suppressing the duffel bag and its contents from evidence, and otherwise denied the motion. The court remitted the matter to the trial court for further proceedings in the prosecution of defendant.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Search Incident to Lawful Arrest > General Overview*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > General Overview*

Once a defendant is lawfully arrested and in custody, the effects in his possession are subject to search and seizure.

**Opinion**

**{133 A.D.2d 425} {519 N.Y.S.2d 411} Appeal by the defendant from a judgment of the County Court, Nassau County (Boklan, J.), rendered July 26, 1985, convicting him of burglary in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, in part, of those branches of the defendant's omnibus motion which were to suppress statements made by him to the police and to suppress physical evidence.**

**Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted to the extent of suppressing the gray vinyl duffel bag and its contents from evidence, and is otherwise denied, the defendant's plea of guilty is vacated, and the matter is remitted to the County Court, Nassau County, for further proceedings.**

**In the early morning of August 16, 1984, while the defendant was riding a bicycle through a residential area of Lawrence, New York, he had a street encounter with police officers which resulted in his arrest and his being charged with burglary in the second and third degrees, petit larceny, possession of burglar's tools, and resisting arrest. On this appeal, the defendant contends that the police conduct was unjustified and illegal at its inception, and that the hearing court erred in failing to rule that all of his statements and the physical evidence obtained as a result of this encounter should be suppressed. The police testimony at the suppression hearing revealed the following sequence of events:**

210). Following the defendant's initial approach to Officer Morea to request the time, the officer properly inquired of the defendant as to his reason for being in the area, which inquiry was devoid of harassment or intimidation. As found by the hearing court and in accordance with the principles enunciated in {519 N.Y.S.2d 413} *People v De Bour (supra)*, the encounter was justified based upon the common-law right to inquire in view of the attendant circumstances which were sufficient to arouse the officer's interest and activate his founded suspicion that criminality was afoot.

The evidence also supports the hearing court's conclusion that the statements made by the defendant prior to his arrest were voluntarily provided by him and lawfully elicited by the police.

However, we conclude that the duffel bag and its contents, which, according to Officer Morea's testimony, were searched about 2 to 3 minutes after the defendant was arrested, subdued and handcuffed outside the bagel shop, should have been suppressed as the fruit of an illegal warrantless search conducted in the absence of exigent circumstances. The arrest took place outside the police vehicle and the duffel bag was located inside the patrol car between the two front seats. Under these facts, it cannot be concluded that the police had a reasonable belief that the defendant could gain possession of a weapon or be able to destroy evidence located in the duffel bag. Thus, the duffel bag was not within the "grabbable area" and its search cannot be sustained as one conducted incident to a lawful arrest *( People v Gokey*, 60 N.Y.2d 309, 311; *cf., People v Smith*, 59 N.Y.2d 454).

Turning to the issues concerning the full search of the defendant conducted outside the premises located at 184 Wildacre Avenue, and the physical evidence obtained at that location, we hold that the search was reasonable and proper, and the evidence obtained as a result thereof is admissible. Once the defendant was lawfully arrested and in custody, the effects in his possession were subject to search and seizure. Although the warrantless search was temporally and physically removed from the arrest, it was reasonable in scope and conducted within a reasonable time after the arrest *(see, United States v Edwards*, 415 U.S. 800). The normal processes incident to the defendant's arrest and custody had not been completed and the police were entitled to conduct a thorough {133 A.D.2d 429} search of his person and seize material evidence of the crimes for which he had been arrested.

With respect to the bicycle, we agree with the hearing court that this was admissible under the inevitable discovery exception to the exclusionary rule. This item was not obtained as a result of the illegal custodial interrogation of the defendant, but was merely identified as a stolen item after the police learned from the defendant the location of the crimes committed by him *(cf., People v Stith*, 69 N.Y.2d 313). In the course of investigating the burglaries reported, it was inevitable that the police would have discovered that the white bicycle was an item stolen from one of the residences.

In view of our holding that the duffel bag and its contents should have been suppressed, on this ground, we reverse the defendant's judgment of conviction and vacate his plea of guilty.

The People of the State of New York, Respondent, v Christopher Baksh, Appellant. (Ind. No. 1298/10)
SUPREME COURT OF NEW YORK, APPELLATE DIVISION, SECOND DEPARTMENT
113 A.D.3d 626; 977 N.Y.S.2d 407; 2014 N.Y. App. Div. LEXIS 112; 2014 NY Slip Op 112
2012-05561
January 8, 2014, Decided

**Editorial Information: Subsequent History**

Leave to appeal denied by People v. Baksh, 2014 N.Y. LEXIS 2079 (N.Y., July 25, 2014).

**CASE SUMMARY** Defendant's omnibus motion to suppress should have been granted as the officer's search of defendant's vehicle was unlawful because the officer never testified that she thought it was substantially likely that there was a weapon in the vehicle or that she perceived some actual and specific threat to her or the other officers' safety.

**OVERVIEW:** HOLDINGS: [1]-Because the officer had probable cause to believe that defendant violated Vehicle and Traffic Law § 1180, the initial vehicle stop was not unlawful; [2]-The officer's search of the vehicle was unlawful because it did not fit within the exception to the general rule that probable cause was required to search a vehicle once the suspects had been removed and patted down without incident; the officer testified that she entered defendant's vehicle to search the bags in the back seat, to see if any of the bags was the proceeds of the robbery; the officer never testified that she thought it was substantially likely that there was a weapon in the vehicle or that she perceived some actual and specific threat to her or the other officers' safety; and the circumstances known to the police at the time of the search did not rise to the level of probable cause.

**OUTCOME:** Judgment reversed; defendant's omnibus motion granted; indictment dismissed; and matter remitted.

**LexisNexis Headnotes**

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Scope of Protection*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops*

Provided a traffic stop is supported by probable cause, neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant.

*Criminal Law & Procedure > Criminal Offenses > Vehicular Crimes > Speeding > Elements*

Vehicle and Traffic Law § 1180 prohibits driving a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Scope of Protection*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Exigent Circumstances > Protection of Officers & Others*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Stop & Frisk > Reasonable Suspicion*

A police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his or her own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself or herself from harm.

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Scope of Protection*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Exigent Circumstances > Protection of Officers & Others*

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Vehicle Searches > General Overview*

Absent probable cause, it is unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers' safety has consequently been eliminated. A narrow exception to that rule exists in circumstances where: following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the

radio run, Monzert came upon a person she described as a tall, black male wearing a black bubble jacket with a fur-lined hood, leaning into the passenger side window of a vehicle {977 N.Y.S.2d 409} and talking to the occupants of the vehicle, which included the defendant, who was sitting in the driver's seat. A witness for the defendant, who was an occupant of the vehicle, testified that the person with whom he and the defendant were talking was the defendant's cousin, and had approximately the same complexion as the defendant, who was a light-skinned Hispanic man. Monzert did not testify that she observed the suspect give anything to the occupants of the car or that she observed the suspect holding a black bag.

Monzert then drove around the block. Monzert testified that when she next saw the vehicle, it was driving at "a high rate of speed" and she pulled the vehicle over. Monzert acknowledged that, once she approached the vehicle, she knew that the suspect she had seen earlier was not in the car. Monzert observed through the open windows a black bubble jacket and several book bags, some of which were black. Monzert did not state that the black bubble jacket had a fur-lined hood, and she did not voucher the jacket she saw in the car. Monzert also did not testify that she saw the word "Puma" on any of the black bags.

At Monzert's request, the defendant and his passenger stepped out of the car and stood behind the rear of the vehicle. At that point, Monzert entered the back seat of the vehicle to check if any of the bags had the word "Puma" written on them. Upon entering the car, Monzert observed that the air conditioning vents had been removed from the center console and that there was a firearm inside the console. She then placed the defendant under arrest.

Contrary to the defendant's contention, the initial vehicle stop was not unlawful. The defendant argues that Monzert did not stop the defendant's vehicle for a traffic violation, but, rather, to investigate a possible robbery or narcotics transaction. However, "provided a traffic stop is supported by probable cause, 'neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant' " (*People v Wright*, 98 N.Y.2d 657, 658-659, 773 N.E.2d 1011, 746 N.Y.S.2d 273 [2002], quoting *People v Robinson*, 97 N.Y.2d 341, 349, 767 N.E.2d 638, 741 N.Y.S.2d 147 [2001]; *see Whren v United States*, 517 US 806, 116 S Ct 1769, 135 L Ed 2d 89 [1996]). Here, since the hearing evidence demonstrated that Monzert {113 A.D.3d 628} had probable cause to believe that the defendant violated Vehicle and Traffic Law § 1180, which prohibits driving a vehicle "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing," the initial vehicle stop was not unlawful (*see People v Miller*, 57 AD3d 568, 570, 869 N.Y.S.2d 150 [2008]; *see generally People v Wright*, 98 N.Y.2d 657 [2002]; *People v Robinson*, 97 N.Y.2d 341, 767 N.E.2d 638, 741 N.Y.S.2d 147 [2001]).

The same cannot be said, however, for Monzert's search of the vehicle. " '[A] police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his [or her] own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself [or herself] from harm' " (*People v Mundo*, 99 N.Y.2d 55, 58, 780 N.E.2d 522, 750 N.Y.S.2d 837 [2002], quoting *People v Torres*, 74 N.Y.2d 224, 226, 543 N.E.2d 61, 544 N.Y.S.2d 796 [1989]; *see People v Carvey*, 89 N.Y.2d 707, 710, 680 N.E.2d 150, 657 N.Y.S.2d 879 [1997]). Therefore, "absent probable cause, it is unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers' {977 N.Y.S.2d 410} safety has consequently been eliminated" (*People v Mundo*, 99 N.Y.2d at 58; *see People v Carvey*, 89 N.Y.2d at 710; *People v Torres*, 74 N.Y.2d at 226). A "narrow exception" to this rule exists in circumstances where: " 'following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officer's safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon' " (*People v Carvey*, 89 N.Y.2d at 710-711, quoting *People v Torres*, 74 N.Y.2d at 231 n 4; *see People v Mundo*, 99 N.Y.2d at 58).

Here, in arguing that Monzert's search of the defendant's vehicle was lawful, the People invoke this exception, relying upon this Court's decisions in *People v Cameron* (6 AD3d 546, 775 N.Y.S.2d 63 [2004]) and *People v March* (257 A.D.2d 631, 685 N.Y.S.2d 88 [1999]). In those cases, citing to Torres and Carvey, this Court held that a police officer's limited search of a vehicle for weapons was permissible in light of certain facts learned by the police officer during the encounter (*see People v Cameron*, 6 AD3d at 546; *People v March*, 257 A.D.2d at 632-633).

Monzert's search of the vehicle does not fit within the exception to the general rule that probable cause is required to search a vehicle once, as here, the suspects have been removed and patted down without incident. The exception, which is geared toward preventing harm to police officers, allows for a limited {113 A.D.3d 629} search *for weapons* (*see People v Cameron*, 6 AD3d at 546; *People v March*, 257 A.D.2d at 633). It requires a substantial likelihood of a weapon in the car, and a resulting danger to the officer's safety that is "actual and specific" (*People v Carvey*, 89 N.Y.2d at 711).

Monzert specifically testified that she entered the defendant's vehicle to search the bags in the back seat, to see if any of the bags was the proceeds of the robbery. Monzert never testified that she thought it was substantially likely that there was a weapon in the vehicle or that she perceived some actual and specific threat to her or the other officers' safety, despite the removal of the defendant from the car (*cf. People v Cheek*, 18 AD3d 475, 794 N.Y.S.2d 129 [2005]; *People v Cameron*, 6 AD3d at 546; *People v March*, 257 A.D.2d at 632-633). Accordingly, contrary to the People's contention, probable cause was required to justify Monzert's search of the vehicle.

JUSTIA

# People v McBride

[*1] People v McBride 2023 NY Slip Op 50827(U) Decided on August 2, 2023 Supreme Court, Nassau County Schwartz, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 2, 2023
Supreme Court, Nassau County

The People of the State of New York

against

Terrence McBride, Defendant.

Indictment No. 70185-23

ADA Andrew Tripodi
Nassau County District Attorney's Office

Christopher Graziano, Esq.
Attorney for Defendant
1539 Franklin Avenue, Suite 300
Mineola, New York 11501

Robert A. Schwartz, J.

Defendant was indicted for criminal possession of a weapon in the second degree, two counts of criminal possession of a weapon in the third degree, criminal possession of a firearm, criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, three counts of criminal possession of a controlled substance in the seventh degree, criminally using drug paraphernalia in the second degree, and aggravated unlicensed operation of a motor vehicle in the second degree. The charges stem from an incident on October 26, 2022, when police officers approached defendant sitting in a parked car and subsequently recovered a loaded gun in the car and drugs and currency from defendant's person. The People also allege that defendant was operating a motor vehicle while knowing or having reason to know that his license or privilege to operate a motor vehicle was suspended or revoked.

On February 15, 2023, the parties stipulated to a Huntley/Dunaway/Mapp suppression hearing. That hearing was held on May 8, 2023, and June 7, 2023. The People called Police Officers Robert Psomas, Joseph Mueller, and Michael Sierzant, and Detective Ryan Coyle, to testify. The People's evidence included video recordings from the officers' body cameras of their interactions with defendant. Defendant presented no evidence. The parties presented oral arguments on June 16, 2023.

"On a motion to suppress physical evidence, the People bear the burden of going forward [*2]to establish the legality of police conduct in the first instance." People v Hernandez, 40 AD3d 777, 778 (2d Dept 2007); see People v Berrios, 28 NY2d 361, 367 (1971). After reviewing the evidence and considering the parties' arguments, the court finds the testimony of the People's witnesses to be generally credible. However, the People failed to establish the legality of the officers' initial encounter with defendant. Accordingly, for the reasons set forth below, defendant's motion to suppress the drugs, the gun, the currency, and defendant's statements, is granted.

Findings of Fact

On October 26, 2022, Officers Psomas and Mueller were on patrol within the Fifth Precinct of the Nassau County Police Department. They were specifically assigned to patrol for "quality of life offenses" — criminal activity such as drug transactions and gang activity. They were in plainclothes, in an unmarked police vehicle. At approximately 12:35 a.m., they were patrolling the area of Hendrickson Park in Elmont. Psomas was driving and

Mueller was in the front passenger seat. Psomas testified that he was familiar with Hendrickson Park, that drug and gang activity were common there, and that he had participated in numerous criminal investigations relating to narcotics, gang activity, and violence in that area. At that time, it was dark outside, and the park was closed.

As Psomas and Mueller drove south on Roquette Avenue, a one-way street that borders Hendrickson Park, they saw a white Nissan Rogue parked on the street. Both officers testified that the Rogue was parked further from the curb than the other vehicles parked on the street, but neither officer testified to the distance between the curb and the Rogue. As he drove past, Psomas saw that an interior light in the Rogue was on, the driver's side window was open, and he saw a person in the driver's seat looking towards his lap and "manipulating an object." Mueller testified that the engine was running. Psomas could not see the driver's hands and did not know what object, if any, he appeared to be manipulating. Psomas and Mueller later identified defendant as the driver of the Rogue. Mueller also testified that there was a clear cover on one of the Rogue's license plates.

Based on those observations and his familiarity with the criminal activity in that area, Psomas decided to investigate further. He drove around the block, stopped behind the Rogue, and activated the red emergency lights of the unmarked police vehicle. Psomas and Mueller testified that they were effecting a "stop" of the Rogue. Psomas exited the vehicle and walked towards the driver side of the Rogue while Mueller walked towards the passenger side. The officers used their flashlights to see inside the Rogue as they walked towards it. As he approached, Psomas saw defendant lift his legs from his seat, arch his back, and put something in the back of his pants. At that time, Psomas did not know what defendant had put in his pants, but testified that based on his training and experience he believed it could have been drugs or a weapon. Mueller believed it to be a plastic bag and ordered defendant to stop moving and to place his hands on the steering wheel.

When Psomas reached the open driver's side window of the Rogue, he noticed defendant was nervous, shaking, and breathing heavily. He asked defendant to turn off the vehicle and keep his hands on the steering wheel. Mueller reached into the vehicle and removed the keys to prevent defendant from leaving. Psomas told defendant that he saw him put something in his pants and asked him what it was. Defendant responded that it was drugs. Psomas opened the driver's side door, told defendant to lean forward, and handcuffed him. Psomas removed [*3]defendant from the vehicle. Mueller searched defendant's pants and pulled a clear plastic bag containing what he believed to be narcotics from inside the back of defendant's underwear. Mueller also recovered $900 in United States currency from defendant's front left pocket.

Police Officers Michael Sierzant and Anthony Roselli also assisted Psomas and Mueller with defendant's arrest. Sierzant testified that he and Roselli also were patrolling that area for "quality of life" offenses and that he also knew drug and gang activity to be common in the area of Hendrickson Park. Sierzant had been watching the Rogue before Psomas and Mueller pulled up behind it. From a nearby gas station, he noticed that the Rogue was parked on the street next to the park with its headlights on but could not see inside it. For approximately 10 minutes he watched the Rogue and did not observe any apparent criminal activity. When Sierzant saw Psomas and Mueller activate their red emergency lights he and Roselli went to assist them. Defendant was already out of the Rogue and in handcuffs when Sierzant and Roselli arrived. Sierzant noticed that the Rogue was further from the curb than other vehicles parked on that street. He estimated that the vehicle was parked more than twelve inches from the curb but did not measure the distance.

After defendant was removed from his vehicle, Psomas asked him further questions. Sierzant was present for their conversation. Psomas asked defendant if the vehicle was his and defendant responded that it belonged to a friend. He asked defendant his name and date of birth, which defendant provided. Psomas ran a computer check using defendant's pedigree information and learned that defendant's license was suspended and that he had outstanding arrest warrants. Psomas asked defendant to confirm his pedigree information and he did. After Psomas told defendant about his outstanding warrants, defendant asked what they were for, and Psomas responded that they pertained to a parole violation and a charge of promoting prison contraband. Defendant explained that he had been charged because another prisoner had dropped contraband on the floor near defendant and did not take responsibility for it. Defendant related that he had recently moved from Hempstead to Queens, and asked if he could smoke a cigarette. Psomas retrieved cigarettes and a lighter from the Rogue, lit a cigarette, and gave it to defendant. Psomas told defendant that it was dangerous for defendant to shove something into his pants when police officers were approaching his vehicle because they could think he had a weapon. Defendant responded that he knew it was dangerous and that was why he froze when the officers approached him. The officers did not make any threats or promises to defendant or otherwise use any force or coercion to prompt his responses.

Mueller searched the Rogue and found on the back seat a backpack containing a loaded black handgun and clear plastic bags commonly used for packaging and selling narcotics. At approximately 1:00 a.m., the officers transported defendant to the Fifth Squad for arrest processing. En route, defendant asked if he was going to get the Rogue back because it belonged to his girlfriend and she needed the keys in the vehicle for her job. Defendant

asked that question spontaneously and not in response to any statements or questions by the officers.

Later that morning, Detective Coyle had a further conversation with defendant in an interview room in the Fifth Squad. Detective Chris DiGregorio was also present for that conversation. Coyle advised defendant of his Miranda rights using a pre-printed card and defendant indicated he understood them. He then asked defendant if he would answer questions and defendant said that he would. Coyle then had a conversation with defendant about, among other things, the drugs and the handgun recovered during his arrest. Coyle then memorialized their conversation into a written statement which defendant reviewed and signed. The detectives [*4]did not make any threats or promises to defendant or otherwise use any force or coercion to prompt his answers. Defendant did not invoke his right to remain silent or ask to speak to an attorney during that conversation.

Conclusions of Law

The People Failed to Establish a Sufficient Justification for the Police Officers' Initial Encounter with Defendant

When police acting in their criminal law enforcement capacity initiate an encounter with a private citizen, the legality of the encounter is assessed using the four-tiered analytical framework established in People v De Bour, 40 NY2d 210 (1976). The first level, a request for information, is the least intrusive, but must be supported by an "objective, credible reason, not necessarily indicative of criminality." People v Hollman, 79 NY2d 181, 185 (1992). The second level, a common-law inquiry, which allows for more pointed questioning, requires "a founded suspicion that criminality is afoot." Id.; see De Bour, 40 NY2d at 223 (the common-law right to inquire is "activated by a founded suspicion that criminal activity is afoot," and entitles a police officer "to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure."). The third level is a stop based on reasonable suspicion in accordance with section 145.50(1) of the Criminal Procedure Law. De Bour, 40 NY2d at 227; see People v Johnson, — NY3d —, 2023 NY Slip Op 02734, *2 (2023). To stop a pedestrian or the occupant of a moving vehicle, the police must have reasonable suspicion that the person has or is about to commit a crime, or probable cause to believe they committed a traffic infraction. See People v Hinshaw, 35 NY3d 427 (2020); People v Spencer, 84 NY2d 749 (1995). The fourth level is an arrest based on probable cause. De Bour, 40 NY2d at 227.

These encounters can be "dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize . . . additional action as the scenario unfolds." De Bour, 40 NY2d at 225. However, a defendant's subsequent conduct "cannot validate an encounter that was not justified at its inception." People v Moore, 6 NY3d 496, 498 (2006).

While police only need an objective credible reason to approach and request information from a person in a parked car, (see People v Ocasio, 85 NY2d 982, 984 [1995]; Spencer, 84 NY2d at 753; People v Harrison, 57 NY2d 470, 475-476 [1982]) they may not forcibly detain or constructively stop an occupant without reasonable suspicion. Harrison, 57 NY2d at 475-476.

The reasonable suspicion to justify a level three encounter has been defined as "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand." People v Martinez, 80 NY2d 444, 448 (1992). A vague or unparticularized hunch does not suffice. See People v Sobotker, 43 NY2d 559, 564 (1978). In addition, "innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand." De Bour, 40 NY2d at 216; see Johnson, — NY3d at *2 (police not justified in conducting a level three stop and frisk after observing the defendant move from driver's seat to passenger seat of his parked car, pull up his pants, and appear nervous); People v Burnett, 126 AD3d 1491, 1494 (4th Dept 2015) (the mere presence of defendant's hand in his pants pocket was innocuous and susceptible to an innocent [*5]interpretation); People v Layou, 71 AD3d 1382, 1383-1384 (4th Dept 2010) (the defendant's mere presence in a vehicle at night in a parking lot in the general vicinity of a burglary did not provide the police with reasonable suspicion); People v Lopez, 75 AD3d 610, 612 (2d Dept 2010) (defendant's presence inside a parked vehicle near an open business was innocuous and did not justify stop even though car interior light was on and defendant was looking down). Here, defendant's presence in a parked car on a residential street, even in a high crime location known for drug activity, did not justify even a level one inquiry, much less a level three stop. That defendant's interior light was on and he appeared to be looking at something in his lap was innocuous and innocent behavior.

Whether a police intrusion amounts to a level-three encounter turns on whether there has been "a significant interruption with an individual's liberty of movement." De Bour, 40 NY2d at 216. "The test is whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom." People v Bora, 83 NY2d 531, 535 (1994). In the context of police encounters with people in motor vehicles, that analysis involves consideration of factors including whether

the police engaged in a chase, activated their emergency lights or sirens, the nature of any verbal commands and whether a loudspeaker was used to issue them, whether the officers approached with weapons drawn, how many officers approached, and where the encounter took place. See Ocasio, 85 NY2d at 984. Based on the facts of this case, including that there was no testimony that the police had a public safety or non-criminal investigative basis for activating their emergency lights, this court finds that the officers effectuated a stop, requiring reasonable suspicion, when they pulled behind defendant's parked car and turned on their emergency lights.

The activation of emergency lights or sirens is a significant factor in determining whether an encounter rises to a level three intrusion. See e.g. Ocasio, 85 NY2d at 984 (noting, among other factors, that police did not use emergency lights or sirens to interfere with the defendant's movement in reasoning that no forcible seizure occurred); Matter of Stewart v Fiala, 129 AD3d 852, 853 (2d Dept 2015) (a forcible stop and detention occurred where police officer pulled his vehicle behind a parked car, blocking it in, activated his emergency lights, shined a light from his vehicle into the parked car, and approached it); People v Strong, 234 AD2d 990 (4th Dept 1996) (because the defendant's car came to a stop without the police activating their lights and sirens they only needed an objective credible reason to approach it); see also Johnson, — NY3d at *1 (noting that officers did not activate their emergency lights when considering the level of police encounter initiated by the police); People v Small, 156 AD3d 820 (2d Dept 2017) (noting police did not activate emergency lights or sirens in concluding defendant was not forcibly stopped before he exited his vehicle); People v Wallgren, 94 AD3d 1339, 1340-1341 (3d Dept 2012) (finding only a level one encounter when police stopped their vehicle behind the defendant's stopped car and activated emergency lights, but noting testimony supported public safety basis for lights).

Here, the police effectively stopped defendant and initiated a level three encounter by activating their emergency lights, walking towards his car to request information, and used their flashlights to see inside his car as they approached. See Ocasio, 85 NY2d at 984; Matter of Stewart, 129 AD3d at 853. Indeed, both officers testified that they were effecting a "stop" of defendant's vehicle and did not provide — nor did the People establish — any public safety or other non-investigatory reason for activating their emergency lights. Although police officers' characterization of their conduct and their subjective intentions are irrelevant (see Whren v [*6]United States, 517 US 806, 813 [1996]; People v Robinson, 97 NY2d 341, 349-250 [2001]), considering the totality of these circumstances, the only reasonable conclusion that can be drawn from the evidence is that the activation of the emergency lights and the officers' approach of defendant's vehicle constituted a significant interruption of defendant's freedom of movement. See Bora, 83 NY2d at 535; De Bour, 40

NY2d at 216; cf. Wallgren, 94 AD3d at 1341, n 1 (testimony established emergency lights were activated for the safety of the officers, the defendant, and others traveling on the dark, 55 mile-per-hour roadway, as well as to advise the defendant that the people approaching his vehicle were police officers as opposed to unknown strangers). In the instant case, the police did not offer any justification for activating their emergency lights other than their view that they were conducting a stop. Under these circumstances it would be hard to imagine any reasonable person in defendant's position feeling he was free to disregard the lights and drive off, especially where driving off could lead to dangerous consequences. [FN1]

In any event, even if the initial encounter did not amount to a stop, the police lacked even an objective, credible reason to justify their initial encounter with defendant. Although a level one request for information only requires an "objective, credible reason," courts have cautioned that there are limits on police officers' authority to initiate even that relatively unobtrusive type of encounter. While police officers have "fairly broad authority" to approach and pose questions, they may not do so on mere "whim or caprice." Hollman, 79 NY2d at 190. Moreover, the mere fact that an area is identified as a "high crime area," without more, does not supply an "objective, credible reason" for police to initiate a level one request for information for any person in that area. See People v McIntosh, 96 NY2d 521, 526-527 (2001). The police must also observe or be aware of conduct that provides a "particularized reason" to request information from that person in that area. Id. at 527. Therefore, if there is no nexus between a person's presence in a high crime area and the person's conduct, then the police may not initiate a level one encounter with that person. See id.; People v Stover, 181 AD3d 1061 (3d Dept 2020) (police lacked objective credible reason to engage defendant who was in a parked car at night in a high crime area and engaged in an argument on his cell phone); People v Rutledge, 21 AD3d 1125, 1126 (2d Dept 2005) (police lacked objective credible reason to initiate encounter with a person who was in a parked car at night in a high crime area and was smoking something); see also People v Laviscount, 116 AD3d 976 (2d Dept 2014) (police lacked objective credible reason to approach and shine flashlight into a car parked in an area where cars were not usually parked and the defendant moved something from the dashboard and threw it on the floor of the car).

Here, Officers Psomas and Mueller testified that they saw defendant sitting in a vehicle, parked on the street, near a closed park, in a high crime area, "manipulating" an unknown object in his lap. That behavior, without more, did not provide an objective credible reason for the police to initiate even a level one intrusion — much less reasonable suspicion — even in a high crime area. See McIntosh, 96 NY2d at 526-527; Stover, 181 AD3d at 1061;

Rutledge, 21 AD3d at 1126. Based on those brief, limited observations, the police could not know whether [*7]defendant was engaging in criminal activity or innocuous behavior such as using his cell phone. See Johnson, — NY3d at *2; Burnett, 126 AD3d at 1494; Layou, 71 AD3d 1382 at 1383-1384; Taveras, 155 AD2d at 136. Nor do these observations establish a nexus between defendant's presence in a high crime area and his equivocal behavior sufficient to justify even a level one intrusion. At the time the officers stopped their vehicle behind defendant's car, activated their emergency lights, walked towards defendant's car to request information, and used their flashlights to see inside defendant's car as they approached it, they did not know what he was manipulating, much less that he possessed drugs or any other contraband. Indeed, Officer Sierzant had been watching defendant's vehicle for approximately 10 minutes and did not observe any apparent criminal activity. Accordingly, the People failed to establish that the officers were justified in initiating even a level one encounter with defendant.

The People correctly argue that a high incidence of crime in the area of a police-initiated encounter can be considered in evaluating whether the encounter was justified. But it is well-settled that the mere fact that an area is a high crime area, without more, does not justify even a level one encounter. See McIntosh, 96 NY2d at 526-527; Stover, 181 AD3d at 1061; Rutledge, 21 AD3d at 1126. Indeed, in all of the cases relied upon by the People in support of their argument, the police had some additional basis, not present here, to approach and question the suspect. See People v Barksdale, 26 NY3d 139 (2015) (officer assigned to patrol for trespassers approached defendant in the lobby of a building that was prone to trespassers and was enrolled in a trespass affidavit program); People v Dixon, 203 AD3d 1726 (2d Dept 2022) (police had objective, credible reason to approach parked vehicle at night in a high crime area in a parking lot with an active trespass affidavit and no trespass signs posted and the defendant appeared to lack a legitimate reason to be in that lot); People v Allen, 181 AD2d 684 (2d Dept 1992) (the defendant and a companion were in a location that had been the site of criminal activity, the companion ran away when the officer entered the building, and the officer had some prior familiarity with defendant); People v Holmes, 181 AD2d 27 (1st Dept 1992) (the defendant was with other people who had been arrested previously, in a known narcotics location, had an unidentifiable bulge in his pocket, and walked away when he saw the police car approach). Simply put, the police cannot approach and request information of a person merely because the person is in a high crime area.

Although the officers later observed defendant lift his legs from the driver's seat, arch his back, put what appeared to be a plastic bag in the back of his pants, appeared to be nervous, and later admitted that he possessed drugs, they made those observations only

after the unjustified initial encounter. Subsequent conduct cannot validate an unjustified initial encounter. See Moore, 6 NY3d at 498.

Finally, the People's argument that the officers were justified in initiating an encounter with defendant based on a violation of the Vehicle and Traffic Law is unpersuasive. A police officer can stop a vehicle when he has probable cause that the driver has committed a traffic violation. See People v Hinshaw, 35 NY3d at 430; Robinson, 97 NY2d at 349-350. There is no exception for violations that are subjectively characterized as "de minimis." People v Pealer, 20 NY3d 447, 457 n 2 (2013); People v Abraham, 111 AD3d 756, 756 (2d Dept 2013). Although vehicles must be parked within twelve inches of the curb or edge of the roadway (see VTL § 1203 [a], [b]), and the court credits the testimony that defendant's vehicle was parked further from the curb than other vehicles parked on the street, neither Psomas nor Mueller testified that the vehicle was parked more than twelve inches from the curb and no officer measured the [*8]distance between the defendant's vehicle and the curb. Although Sierzant estimated that the vehicle was parked more than twelve inches from the curb, he did not make that observation until after Psomas and Mueller arrested defendant. Moreover, while a review of the video recordings from the officers' body cameras does indicate that defendant's vehicle was parked slightly further from the curb than other vehicles, it did not clearly establish that defendant was more than twelve inches from the curb. Thus there were no "credible facts establishing reasonable cause to believe" (People v Guthrie, 25 NY3d 130, 133 [2015]) defendant violated section 1203 of the Vehicle and Traffic Law.

Likewise, although the video recordings do show that there was a clear plastic covering on the rear license plate on defendant's vehicle in violation of the Vehicle and Traffic Law (see VTL § 402 [1] [b]), the court does not credit the testimony that this was observed before the stop or was a basis for Psomas and Mueller to stop defendant's vehicle. Therefore, the court rejects the People's argument that this stop was predicated on or justified by probable cause to believe defendant committed a traffic violation. See Hinshaw, 35 NY3d at 430.

Accordingly, all evidence obtained subsequent to defendant's unjustified stop, including the drugs and currency seized from defendant, the handgun seized from defendant's vehicle, and the statements defendant made to the police must be suppressed as the fruit of the poisonous tree. See People v Bailey, 164 AD3d 815, 818 (2d Dept 2018). However, the unjustified stop does not require suppression of the records from the Department of Motor Vehicles establishing that defendant's license was suspended or revoked. Those records are not suppressible as the fruit of the stop. See People v Tolentino, 14 NY3d 382 (2010).

This constitutes the decision and order of the court.

Dated: Mineola, New York
August 2, 2023
Robert A. Schwartz
Acting Supreme Court Justice Footnotes

Footnote 1:Indeed, as a matter of policy such conduct should not be condoned. It would be impossible for a parked motorist to know when emergency lights required him to remain stopped and when they gave him the option to disregard them and drive off.

Some case metadata and case summaries were written with the help of AI, which can produce inaccuracies. You should read the full case before relying on it for legal research purposes.

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

of the vehicle or use force against them. Following this we will detail the scope of any investigatory search following the stop. Finally, to tie up loose ends, we will explore various related issues including observations of a vehicle from the curb and examination of vehicle identification numbers.

## § 5:3 Vehicle stops

Stopping a vehicle and its occupants is a "seizure" of both the vehicle and the occupants under the Fourth Amendment.[1] In the landmark case of *Terry v. Ohio*,[2] the United States Supreme Court permitted a brief

---

[Section 5:3]

[1]*See, e.g.*, Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007); Berkemer v. McCarty, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); Delaware v. Prouse, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). *Compare* U.S. v. Anderson, 114 F.3d 1059 (10th Cir. 1997) (routine traffic stop is a seizure with

to drive rental car. Instead, motorist was driving the vehicle past the expiration of the rental agreement.[39]

- —Vehicle stop in violation of New York law and Immigration and Customs Enforcement policy was still valid; no Fourth Amendment protection for violation of federal agency's internal procedures.[40]
- While police may rely on the "fellow officer rule," that is, the officer stopping the vehicle may use reasonable suspicion developed by another officer, that "fellow officer" must testify to his reasonable suspicion at a suppression hearing if the stop is challenged.[41]

The last ground would be to investigate previously

---

[36]U.S. v. Wheat, 278 F.3d 722 (8th Cir. 2001) (good discussion; court notes that police are in a Catch-22: make the stop or wait until vehicle violation is observed or a drunk driver hurts someone; a drunk driver is like a "mobile bomb").

[37]U.S. v. Dorais, 241 F.3d 1124 (9th Cir. 2001). Cf. U.S. v. Santos, 403 F.3d 1120 (10th Cir. 2005) (discussion of significance of rental agreement implying an unusual cross-country road trip of four days).

[38]U.S. v. Wilson, 205 F.3d 720 (4th Cir. 2000) (overruling prior precedent).

[39]U.S. v. Mubdi, 691 F.3d 334, vacated on other grounds, 2013 WL 3155229 (S. Ct. June 24, 2013).

[40]U.S. v. Wilson, 699 F.3d 235 (2d Cir. 2012).

[41]U.S. v. Coward, 296 F.3d 176 (3d Cir. 2002).

to believe he is doing so now. In fact, it does not tell us why he has such a reputation at all. "Reputation" may be no more than gossip and innuendo told and re-told. Further, the fact that a person is in a high-crime area[22] or associates with criminals would not, alone, give rise to probable cause.

Generally, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Probable cause exists if, under the totality of the circumstances, the officer had reasonably trustworthy information sufficient to warrant a prudent individual in believing that the driver had committed or was committing an offense.[23] Courts have considered what constitutes sufficient evidence that the officer deciding to stop a car for speeding had reasonably trustworthy information sufficient to support the officer's belief that the driver was speeding. In a Fourth Circuit case, the appellate court rejected the district court's determination that the officer had probable cause to believe a traffic violation had occurred because the officer had been trained to estimate speeds and because the certification that he received depended on accuracy in estimating speeds.[24] The appellate court explained that contrary to that finding, the record indicated that the officer was trained to use a radar unit. Rather than being "trained to estimate speeds," he was given the opportunity to "guess" the speed of 12 vehicles and, in doing so, he demonstrated the proficiency of guessing within a total margin of error of 42 mph for all 12 of those vehicles.[25] There was no evidence that the officer received any specialized training in the estimation of vehicle speeds. In fact, the officer's own testimony confirmed that he used absolutely no technique or method to visually guess vehicle speeds.[26] Given this testimony, and the absence of contrary evidence in the record, it was clearly erroneous for the district court

appearance and previous record was . . . entirely irrelevant upon the issue of probable cause. But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will." *Beck v. State of Ohio*, 379 U.S. 89, 97, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964).

[22]Where officers operating in an area known for drug activity, saw the defendant, whom they did not know, look up and down the street and then get into a cab, there was no probable cause to arrest. *Rios v. U.S.*, 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960).

[23]*U.S. v. Sowards*, 690 F.3d 583 (4th Cir. 2012), quoting *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964).

[24]*U.S. v. Sowards*, 690 F.3d 583 (4th Cir. 2012).

[25]*U.S. v. Sowards*, 690 F.3d 583 (4th Cir. 2012).

[26]*U.S. v. Sowards*, 690 F.3d 583 (4th Cir. 2012).

rant Hepp in believing Reis was trying to convince Hepp that he was a police officer.[118]

- During *Terry* stop, defendant's admission that she had cocaine in her purse constituted probable cause to arrest.[119]
- Where a lawful frisk (*Terry*) revealed a concealed weapon, there was probable cause to arrest for the unlawful carrying of that weapon.[120]
- Where defendant could not, during a lawful traffic stop, demonstrate his ownership of the vehicle, the officer reasonably concluded that the vehicle contained a hidden compartment, and amount of luggage in the vehicle was less than would be expected for the two-week trip defendant claimed to be taking, there was probable cause to arrest defendant.[121]
- Where two men deplaned from a narcotics "source city," one of the two was found to be carrying narcotics in quantities larger than would be carried for personal use, and the other then became nervous, "backed up against the wall, zipped his jacket, and folded his arms tightly across his chest," there was probable cause to arrest the second man.[122]
- Where officer "A" has no probable cause to arrest but relies on an assertion by officer "B" that probable cause to arrest exists, the validity of the arrest depends upon whether officer "B" actually has probable cause to arrest.[123]
- Drug Enforcement Administration agents had probable cause to arrest the defendant; while preparing to follow a vehicle that they knew had just been loaded with 500 kilograms of marijuana, the agents saw a truck driven by the defendant pull out of a nearby lot and begin following closely behind the vehicle, and the truck stayed approximately one vehicle-length behind the other vehicle for 20 minutes, as they entered a multi-lane highway, then left the highway and, over at least two more turns, ended up in a remote location where it would have been unlikely to see two cars at the same time, and while following behind the truck, the agents saw the defendant's passenger constantly checking the mirrors and talking on his mobile phone as he looked back at the agents' unmarked car.[124]
- Although a person's mere propinquity to another person

---

[118] *U.S. v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990).

[119] *U.S. v. Condelee*, 915 F.2d 1206 (8th Cir. 1990).

[120] *U.S. v. Henning*, 906 F.2d 1392 (10th Cir. 1990) (rejected on other grounds by U.S. v. Freisinger, 937 F.2d 383 (8th Cir. 1991)) and (holding modified on other grounds by, U.S. v. Moore, 958 F.2d 310 (10th Cir. 1992)).

[121] *U.S. v. Arango*, 912 F.2d 441 (10th Cir. 1990).

[122] *U.S. v. Simmons*, 918 F.2d 476 (5th Cir. 1990).

[123] *Rogers v. Powell*, 120 F.3d 446 (3d Cir. 1997).

[124] *U.S. v. Stone*, 636 F.3d 846 (7th Cir. 2011).

Case 1:25-cv-02418-NCM-SDE Document 1 Filed 04/09/25 Page 34 of 55 PageID #: 34



### What does Probable Cause permit?

Probable cause is the standard required for warrants.[4] It is the standard for arrests, whether or not a warrant is required.[5] It is the standard required for most evidentiary searches,[6] although some such searches have been justified on less than probable cause in special situations.[7] Usually, these special situations involve a search justified by prior lawful Fourth Amendment activity (an example of this would be the search incident to a lawful arrest which is discussed in Chapter 10) or a search justified by "special needs" beyond the normal law-enforcement interest (an example of this would be the ad-hoc balancing cases discussed in Chapters 22 to 26). It is the standard for seizures which extend beyond the limited seizures authorized on less than probable cause.[8]

The scope of the probable cause controls the scope of permitted searches and seizures.[9] Thus, when an officer sees a minor traffic infraction there is probable cause to stop (seize) the vehicle, check the driver's license and registration, issue the ticket or warning, run the license number through the police computer and do other routine activities incident to and within the scope of the purpose of the stop. This probable cause, without more, would not support a search of the vehicle.

The Fourth Amendment protection against seizure but upon probable cause does not end when an arrestee becomes held pursuant to legal process, and a plaintiff may bring a *Bivens* suit against arresting officers to vindicate that right.[10]

---

[4] "[N]o Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. Note that the *meaning* of "probable cause" which applies to criminal investigations is, arguably, different from the meaning of the phrase when the search is administrative in nature. *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967).

[5] *Cf. U.S. v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976), holding that a warrant was not required to make a felony arrest (not in the home) with probable cause.

[6] *E.g., Carroll v. U.S.*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 (1925).

[7] *E.g., U.S. v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (search of a person incident to arrest) and *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720, 21 Ed. Law Rep. 1122 (1985).

[8] *E.g., Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

[9] *E.g., U.S. v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

[10] *Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013).

# EXHIBIT A

# New York City Police Department
## Omniform System - Arrests

**RECORD STATUS: NYSID ENTERED** | **Arrest ID: K22613288 - Z**

**Arrest Location: SOUTH WEST CORNER 3 AVENUE & 50 STREET** | **Pct: 072**

**Arrest Date: 04 01 2022**
**Time: 23:37:00**
Sector: B
Strip Search Conducted: NO
Viper Initiated Arrest: NO
Stop And Frisk: NO
Serial #: 0000-000-00000

Processing Type: ON LINE
DCJS Fax Number: KO010534
Special Event Code: NO - NOT APPLICABLE
DAT Number:
ICAD# D22040125336
Return Date 0000 00 00

Current Location of Perpetrator:
Borough Brooklyn
Type: ALL PD LOCATIONS
Location: 072 PRECINCT

**COMPLAINTS:** | Arrest #: K22613288

| COMPLAINT NUMBER | REPORT DATE | RECORD STATUS | OCCUR DATE | OCCUR TIME |
|---|---|---|---|---|
| [redacted] | 2022-04-01 | Valid, Initial Arrests made | 2022-04-01 | 23:24 |

**CHARGES:** | Arrest #: K22613288

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 265.03 01B | F | C | 1 | CPW-2ND: LOADED FIREARM |
| #02 | No | VTL0375 12A | I | 0 | 2 | EQUIP VIO:WINDSHIELD TINT VIOL |
| #03 | No | VTL0402 01 | I | 0 | 1 | LIC PLATE VIOL REG PLATE DISP |

| How Arrest came about: | | # Injuries 00 | # Fatalities 00 | Test Given: | | Reason Vehicle Not Forfeit: | | |
|---|---|---|---|---|---|---|---|---|
| Blood Specimen Taken: | Blood Specimen Refused: | Urine Specimen Taken: | Urine Specimen Refused: | Oral Fluid Specimen Taken: | Oral Fluid Specimen Refused: | Breath Sample Refused: | Breath Sample Reading: | BrAC: 0.0 |
| Role: IDTU Technician | Department: NYPD | Tax: 0 | Command: | Shield: 0 | Rank: | Last Name: | First Name: | MI: / IDTU/Blood Case No |
| Role: Point Person | Department: | Tax: | Command: | Shield: | Rank: | Last Name: | First Name: | MI: |
| Role: Supv In Charge of Checkpoint | Department: | Tax: | Command: | Shield: | Rank: | Last Name: | First Name: | MI: |

**DETAILS:** | Arrest #: K22613288

Was the defendant recording police related activity at time of arrest?
NO

AT TPO AO DID OBSERVE DEF OPERATING A 2011 JAQUAR BLACK IN COLOR 4DSD FLORIDA PLATE #[redacted] WITH EXCESSIVE WINDOW TINTS AND WITH REAR PLATE COVER. DEF WAS FOUND TO BE IN POSSESSION OF A LOADED FIREARM SERIAL [redacted] MODEL [redacted] CAL [redacted]

**DEFENDANT: LEGER, ABDOLPH** | NYSID #: 15520696R | Arrest #: K22613288

Nick/AKA/Maiden [redacted]
[redacted]
Place Of Birth:
Is [redacted]
If Yes, Indicate Language: [redacted]
Identification ID:
Identification #:
Physical Condition: [redacted]
Drug Used: NONE

[redacted]
Hair Style: UNKNOWN
[redacted]
Soc.Security #: [redacted]
Lic/Permit Type
Lic/Permit No:

[redacted]
Issuing Court:
Docket #:
Expiration Date:
[redacted]

[redacted]
Name:
Identifiers:

[redacted]

Phone # and E-Mail Address:
HOME: NONE
[redacted]
BUSINESS NONE
E-MAIL: NONE

N.Y.C.H.A. Resident NO N.Y.C. Housing Employee NO On Duty NO
Development: N.Y.C. Transit Employee: NO

**Physical Force: NONE**

Gun: HANDGUN
Weapon Used/Possessed POSSESSED
Non-Firearm Weapon:
Other Weapon Description:
[redacted]
Color: [redacted]
Type: PISTOL [redacted]
Discharged NO
Recovered YES
Serial Number Defaced: NO
Serial Number: [redacted]

Used Transit System NO
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses
Card #:

| CRIME DATA | DETAILS |
|---|---|
| STATEMENTS MADE | N/A |
| METHOD OF FLIGHT | N/A |
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | ACCESSORIES - JEANS - BLACK |
| CLOTHING | FOOTWEAR - SNEAKERS - BLACK |
| CLOTHING | OUTERWEAR T SHIRT OR TANK TOP BLACK |
| CLOTHING | HEADGEAR - UNK - UNKNOWN COLOR |
| CHARACTERISTICS | |
| CHARACTERISTICS | EYEGLASSES |
| CHARACTERISTICS | LINE TATOO ACROSS FACE |
| BODY MARKS | ARM -TATTOO(CAN NOT DESCRIBE) |
| BODY MARKS | FACE/HEAD -TATTOO(CAN NOT DESCRIBE) |
| IMPERSONATION | UNKNOWN |

**JUVENILE DATA** Arrest # K22613288

Relative Notified: Personal Recog:
Number Of Priors: 0 Name:
School Attending Phone Called
Mother's Maiden Name: Time Notified:

**ASSOCIATED ARRESTS:** Arrest #: K22613288

ARREST ID COMPLAINT #

***VEHICLE: # 1 of 1*** VIN: [redacted] Arrest #: K22613288

Vehicle Was OTHER
Vehicle Stolen/Attempted Stolen From
Invoice #

Plate(s)
[redacted]
Type:
Ins Code
Policy #:

Vehicle
[redacted]
Make:
Model:
Style:
Color:

Recovered Prior To Alarm:
Alarm #:
Precinct 000
Date:
Time:
Transmitted By:

Vehicle Condition:
Held For Forfeiture:

**DEFENDANTS CALLS:** Arrest #: K22613288

1 -- REFUSED,REFUSED

**INVOICES:** Arrest #: K22613288

INVOICE# COMMAND PROPERTY TYPE VALUE

[redacted] [redacted]

**ARREST RULES:** Arrest #: K22613288

ORIGINAL ARREST PROCESSING TYP O
OFFENCE DATE : 04/01/2022
AGE AT TIME OF OCCURRENCE : 41
AGE BAND : C_RTA_2019
JUV OFFENDER CHARGE : , IS JUV OFFENDER FALSE
JUV. DELINQUENT CHARGE : , IS JUV.DELINQUENT : FALSE
JUV. ADOLESCENT CHARGE : , IS ADOLESCENT : FALSE

**ARRESTING OFFICER:** POM ROSARION SAINTELME — Arrest #: K22613288

Tax Number: 959960 On Duty: YES
Other ID (non-NYPD): 0 In Uniform: YES
Shield: 21423 Squad: C2
Department NYPD Chart 05
Command: 072 Primary Assignment OTHER UNIFORM

**Force Used:** NO No Force Used by any MOS
Type:
Reason
Officer Injured: NO
Officer Body Worn Camera: YES
TRI Number: 0000-000-00000 Suffix: 0

| A i ting Officer | Department: | Command: | Tax Number | Other ID (non NYPD) | Body Worn Camera: | TRI Number: | Force Used: |
|---|---|---|---|---|---|---|---|
| ORTEGA, NICHOLAS A | NYPD | 072 | 971589 | 0 | YES | 0000-000-00000 Suffix: 0 | NO - No Force Used by any MOS Type: Reason: |

| | | | |
|---|---|---|---|
| Arresting Officer Name: POM SAINTELME, ROSARION | Tax #: 959960 | Command: 072 | Agency: NYPD |
| Supervisor Approving: SGT ADAMSEDWARDS K | Tax #: 953617 | Command: 072 | Agency: NYPD |
| Report Entered by: POM SAINTELME, ROS | Tax #: 959960 | Command: 072 | Agency: NYPD |

END OF ARREST REPORT
K22613288

Print thi Report

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436207

Invoicing Command: 72ND PRECINCT

Invoice Status: OPEN, CEU REVIEW PENDING

Invoice Date: 04/02/2022

Property Type: VEHICLE/BOAT

Property Category: ARREST EVIDENCE

| Officers | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Invoicing Officer | | | 959960 | 072 PRECINCT |
| Arresting Officer | | | 959960 | 072 PRECINCT |
| Investigating Officer | | | | |
| Det Squad Supervisor | | | | |
| CSU/ECT Processing | | | | |
| Owner Notified By | | | | |

OCME.EU No.
OCME.FB No.
Police Lab Evid.Ctrl.No.
Det Sqd. Case No.
CSU/ECT Run No. 837/22
Date: Time:

How the Owner was Notified:

**Vehicle Details**

Vehicle Year: 2011 Make: JAGUAR Model: XJ Type: 4 DOOR SEDAN Color: BLACK

VIN: SAJWA2GB3BLV10100 No. of Lic. Plates: 1 Lic. Plate No.: Lic. Plate State: PENNSYLVANIA

Certificate of Inspection No.: Inspection State: NONE Year: Vehicle Running:

Sticker No.: 6739826

Additional Description:

Location Vehicle Recovered From:

Time: Date: Personal Property Removed:

Recovery Location:

**ADA Details**

ADA Office Last Name First Name Tel No.

**REMARKS**

959960 04/02/2022 10:25 : PROPERTY BEING VOUCHERED TO DETERMINE TRUE OWNERSHIP.

959960 04/02/2022 16:20 : Invoice Approved By 952159

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 04/01/2022 | 26502/CRIM POSS WEAPON | FELONY | | |
| 04/01/2022 | CPW-2ND: LOADED FIREARM | FELONY | N/A | N/A |

| | Prisoner(s) Name | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | LEGER, ABDOLPH | 06/20/1980 | 41 | 1921 N 7 STREET PHOLADEPHIA, PA 19122 | K22613288 | 15520696R |

Complaint No. 2022-072-001982

Related Comp No.(s) N/A

Invoice No. 3001436207

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:08

PCD Storage No.

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436207

Aided/Accident No.(s) N/A

Related Invoice(s) N/A

Inspection Details

Inspection No: 890000423008

Inspection Date: 04/02/2022 10:25

Inspection Description: INVOICING INSPECTION

Inspection Officer: 959960

Battery: YES

Tires: 04

Airbags: 04

Navigation System: YES

Radio: AM/FM

Additional Audio Equipment: NONE

Special Wheels: NONE

Wheel Covers: NONE

Keys With Vehicle: IGNITION & TRUNK

Trunk: OPEN

Glove Compartment: OPEN

Internal Condition: FAIR

External Condition: FAIR

Other: NONE

Odometer Reading: TRUE MILEAGE UNKNOWN

Missing/Damaged Parts:

Additional Equipment/Accessories:

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | | | 959960 | 072 PRECINCT | 04/02/2022 | 10:25 |
| Invoicing Officer | | | 959960 | 072 PRECINCT | 04/02/2022 | 16:20 |
| Approved By | | | 952159 | 072 PRECINCT | 04/02/2022 | 15:20 |

# NYPD Property Clerk Invoice

PD521-141 (Rev.12/18)

Invoice No. 3001436207

## NOTICE TO PERSONS FROM WHOM PROPERTY HAS BEEN REMOVED BY THE POLICE DEPARTMENT

The person from whose possession property was taken should retain and safeguard the invoice. The New York City Police Department can change the Invoice Category without further notice. In order to obtain the return of property, the claimant or a representative authorized by a notarized letter to claim the property will be required to submit, in person or by mail, the invoice and proper identification (one (1) government issued photo identification plus at least one (1) non-photo identification) to the office of the Property Clerk. A claimant demanding the return of property other than Arrest Evidence, DNA Evidence or Forfeiture does not require a District Attorney's Release and may make such demand whether or not criminal proceedings have been instituted and, if instituted, whether or not such proceedings have been terminated.

## ARREST EVIDENCE/DNA EVIDENCE/FORFEITURE

The property may be disposed of by the Property Clerk according to law, unless the claimant demands the property no later than **120 days** after the termination of criminal proceedings. A claimant demanding the return of arrest evidence/DNA evidence/forfeiture from the Property Clerk should obtain, before making a demand, either a District Attorney's Release or a supervising District Attorney's statement refusing to grant a release. Presentation of either or both of these documents to the Property Clerk is **NOT** required for making a timely demand. If a demand for the property is made without a District Attorney's Release or a supervising District Attorney's statement, the claimant shall have **270 days** from the date of demand to obtain a District Attorney's Release or a Supervising District Attorney's statement refusing to grant a release. If a release or a statement refusing to grant a release is not provided to the Property clerk within **270 days** of the date of demand, the property may be disposed of according to law. If a claimant timely provides the Property clerk with a District Attorney's statement refusing to grant a release, the claimant must, when the District Attorney no longer needs the property, obtain and submit a District Attorney's Release to the Police Department. Forfeiture property may additionally require a Civil Enforcement Release prior to release.

## INVESTIGATORY/DNA INVESTIGATORY

Investigatory property is disposed of after **one (1) year**, unless otherwise requested by the investigating officer.

## DECEDENT'S PROPERTY

LETTERS TESTAMENTARY or LETTERS OF ADMINISTRATION obtained from the Surrogate Court of the decedent's county of residence are required for release.

## FOUND PROPERTY

Pursuant to law, found property will be held for the following periods of time (unless sooner delivered to owner):
a. Property having a value of less than $100 — **3 months**
b. Property having a value of $100 but less than $500 — **6 months**
c. Property having a value of $500 but less than $5000 — **1 year**
d. Property having a value of $5000 or more — **3 years**

## SAFEKEEPING

Property held for Safekeeping must be claimed within **120 days** from the date it was invoiced. After **120 days**, property will be disposed of as per applicable NYC Law. All firearms, rifles, and shotguns, invoiced for safekeeping must be reclaimed by the owner within **one (1) year** of the date of invoice. After the expiration of **one (1) year**, the firearm, rifle, or shotgun will be disposed of by the Property Clerk pursuant to law, without further notice.

## PEDDLER PROPERTY

Peddler property that is deemed trademark counterfeit, and classified found/abandoned property will be destroyed on intake. All other Peddler Property is held for a period of **90 days**. A claimant that demands the return of his/her peddler property must obtain a letter from the NYPD Law department stating the property can be released and:
a. A claimant that was issued an Environmental Control Board summons must obtain a decision and order sheet from ECB.
b. A claimant that was issued a Criminal Court summons or was arrested must obtain a court disposition sheet in order to obtain his/her peddler property.

Please bring this receipt with you when you are notified to appear to claim the property. For information concerning property which you delivered to this Department, please call the Property Clerk's office in the borough in which the property was turned in. The Property Clerk offices are located at:

| | | |
|---|---|---|
| **MANHATTAN** | 1 Police Plaza | 646-610-5906 |
| **BRONX** | 215 East 161 St. | 718-590-2806 |
| **BROOKLYN** | 11 Front Street | 718-624-5364 |
| **QUEENS** | 47-08 Austell Place | 718-433-2678 |
| **STATEN ISLAND** | 1 Edgewater Plaza | 718-876-8413 |
| **PEARSON PLACE WAREHOUSE** | 47-15 Pearson Place | 718-361-1021 |

***Bank Cards/Checks will only be issued between the hours of 9:00 AM and 2:30 PM**

If vehicle is involved, contact the following:
**SPRINGFIELD GARDENS AUTO POUND** 174-20 North Boundary Road, Queens, NY 718-553-9555

For more information visit the Property Clerk Division's website:
**http://www.nyc.gov/html/nypd/html/property_clerk/property_clerk.shtml**

Invoice No. 3001436207

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:08

PCD Storage No.
--
Page No.3 of 4

**NYPD Property Clerk Invoice**
PD 521-141(Rev.12/18)

Invoice No. 3001436228

## NOTICE TO PERSONS FROM WHOM PROPERTY HAS BEEN REMOVED BY THE POLICE DEPARTMENT

The person from whose possession property was taken should retain and safeguard the invoice. The New York City Police Department can change the invoice Category without further notice. In order to obtain the return of property, the claimant or a representative authorized by a **notarized letter** to claim the property will be required to submit, in person or by mail, the invoice and **proper identification** (one (1) government issued photo identification plus at least one (1) non-photo identification) to the office of the Property Clerk. A claimant demanding the return of property other than Arrest Evidence, DNA Evidence or Forfeiture does not require a District Attorney's Release and may make such demand whether or not criminal proceedings have been instituted and, if instituted, whether or not such proceedings have been terminated.

## ARREST EVIDENCE/DNA EVIDENCE/FORFEITURE

The property may be disposed of by the Property Clerk according to law, unless the claimant demands the property no later than **120 days** after the termination of criminal proceedings. A claimant demanding the return of arrest evidence/DNA evidence/forfeiture from the Property Clerk should obtain, before making a demand, either a District Attorney's Release or a supervising District Attorney's statement refusing to grant a release. Presentation of either or both of these documents to the Property Clerk is **NOT** required for making a timely demand. If a demand for the property is made without a District Attorney's Release or a supervising District Attorney's statement, the claimant shall have **270 days** from the date of demand to obtain a District Attorney's Release or a Supervising District Attorney's statement refusing to grant a release. If a release or a statement refusing to grant a release is not provided to the Property clerk within **270 days** of the date of demand, the property may be disposed of according to law. If a claimant timely provides the Property clerk with a District Attorney's statement refusing to grant a release, the claimant must, when the District Attorney no longer needs the property, obtain and submit a District Attorney's Release to the Police Department. Forfeiture property may additionally require a Civil Enforcement Release prior to release.

## INVESTIGATORY/DNA INVESTIGATORY

Investigatory property is disposed of after one (1) year, unless otherwise requested by the investigating officer.

## DECEDENT'S PROPERTY

LETTERS TESTAMENTARY or LETTERS OF ADMINISTRATION obtained from the Surrogate Court of the decedent's county of residence are required for release.

## FOUND PROPERTY

Pursuant to law, found property will be held for the following periods of time (unless sooner delivered to owner):
a. Property having a value of less than $100 — **3 months**
b. Property having a value of $100 but less than $500 — **6 months**
c. Property having a value of $500 but less than $5000 — **1 year**
d. Property having a value of $5000 or more — **3 years**

## SAFEKEEPING

Property held for Safekeeping must be claimed within **120 days** from the date it was invoiced. After **120 days**, property will be disposed of as per applicable NYC Law. All firearms, rifles, and shotguns, invoiced for safekeeping must be reclaimed by the owner within **one (1) year** of the date of invoice. After the expiration of **one (1) year**, the firearm, rifle, or shotgun will be disposed of by the Property Clerk pursuant to law, without further notice.

## PEDDLER PROPERTY

Peddler property that is deemed trademark counterfeit, and classified found/abandoned property will be destroyed on intake. All other Peddler Property is held for a period of **90 days**. A claimant that demands the return of his/her peddler property must obtain a letter from the NYPD Law department stating the property can be released and:
a. A claimant that was issued an Environmental Control Board summons must obtain a decision and order sheet from ECB.
b. A claimant that was issued a Criminal Court summons or was arrested must obtain a court disposition sheet in order to obtain his/her peddler property.

Please bring this receipt with you when you are notified to appear to claim the property. For information concerning property which you delivered to this Department, please call the Property Clerk's office in the borough in which the property was turned in. The Property Clerk offices are located at:

| | | |
|---|---|---|
| **MANHATTAN** | 1 Police Plaza | 646-610-5906 |
| **BRONX** | 215 East 161 St. | 718-590-2806 |
| **BROOKLYN** | 11 Front Street | 718-624-5364 |
| **QUEENS** | 47-08 Austell Place | 718-433-2678 |
| **STATEN ISLAND** | 1 Edgewater Plaza | 718-876-8413 |
| **PEARSON PLACE WAREHOUSE** | 47-15 Pearson Place | 718-361-1021 |

***Bank Cards/Checks will only be issued between the hours of 9:00 AM and 2:30 PM**

If vehicle is involved, contact the following:
**SPRINGFIELD GARDENS AUTO POUND** 174-20 North Boundary Road, Queens, NY 718-553-9555

For more information visit the Property Clerk Division's website:
**http://www.nyc.gov/html/nypd/html/property_clerk/property_clerk.shtml**

Invoice No. **3001436228**

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:05

PCD Storage No.
--
Page No.4 of 5

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436228

Invoicing Command: 72ND PRECINCT

Invoice Status: OPEN

Invoice Date: 04/02/2022

Property Type: GENERAL PROPERTY

Property Category: SAFEKEEPING

| Officers | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Invoicing Officer | | | 959960 | 072 PRECINCT |
| Arresting Officer | | | 959960 | 072 PRECINCT |
| Investigating Officer | | | | |
| Det Squad Supervisor | | | | |
| CSU/ECT Processing | | | | |

OCME.EU No.
OCME.FB No.
Police Lab Evid.Ctrl.No.
Det Sqd. Case No.
CSU/ECT Run No. 837/22

| Item | Total QTY | Article(s) | Estimated Value | Pkg. No. | QTY | Disposition |
|---|---|---|---|---|---|---|
| 1 | 4 | CLOTH<br>COLOR: ASSORTED COLORS DESCRIPTION: MICROFIBER CLOTH. | | 1300826958 | 4 | |
| 2 | 3 | OTHER ACCESSORY<br>COLOR: BLACK DESCRIPTION: CUP HOLDER | | 1300826958 | 3 | |
| 3 | 1 | CELL PHONE - ACCESSORIES<br>COLOR: BLACK DESCRIPTION: PHONE MOUNT | | 1300826958 | 1 | |
| 4 | 1 | OTHER ACCESSORY<br>COLOR: BLACK/GREEN DESCRIPTION: PUMP | | 1300826958 | 1 | |
| 5 | 1 | MIRROR<br>COLOR: BLUE DESCRIPTION: REAR VIEW MIRROR | | 1300826958 | 1 | |
| 6 | 1 | OTHER ACCESSORY<br>COLOR: BLACK DESCRIPTION: MIRROR | | 1300826958 | 1 | |
| 7 | 2 | SUN GLASSES<br>COLOR: ASSORTED COLORS | | 1300826958 | 2 | |
| 8 | 1 | OTHER ACCESSORY<br>COLOR: BLACK DESCRIPTION: SUN GLASSES CASE | | 1300826958 | 1 | |
| 9 | 2 | UMBRELLA<br>COLOR: PURPLE | | 1300826958 | 2 | |
| 10 | 1 | OTHER ACCESSORY<br>COLOR: ASSORTED COLORS DESCRIPTION: SMALL MEDAL CASE | | 1300826958 | 1 | |
| 11 | 2 | OTHER ACCESSORY<br>COLOR: WHITE DESCRIPTION: GAUGES | | 1300826958 | 2 | |
| 12 | 1 | MP3 PLAYER<br>COLOR: BLACK MAKE: APPLE DESCRIPTION: 32G IPOD | | 1300826958 | 1 | |
| 13 | 1 | SCISSOR<br>COLOR: SILVER DESCRIPTION: SMALL | | 1300826958 | 1 | |
| 14 | 1 | E-Z PASS<br>COLOR: ASSORTED COLORS | | 1300826958 | 1 | |
| 15 | 1 | OTHER ACCESSORY<br>COLOR: BLUE DESCRIPTION: FUNNEL | | 1300826958 | 1 | |
| 16 | 1 | OTHER ACCESSORY<br>COLOR: BLUE DESCRIPTION: COVER | | 1300826958 | 1 | |

Invoice No. 3001436228

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:05

PCD Storage No.
--

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436228

| | | | | |
|---|---|---|---|---|
| 17 | 1 | OTHER HOUSEWARE & TOOL<br>COLOR: BLACK DESCRIPTION: SMALL MEASURING TAPE | 1300826958 | 1 |
| 18 | 2 | OTHER ACCESSORY<br>COLOR: ASSORTED COLORS DESCRIPTION: SMALL TUBE CONTAINER | 1300826958 | 2 |
| 19 | 4 | WIRES<br>COLOR: ASSORTED COLORS DESCRIPTION: USB CORDS | 1300826958 | 4 |
| 20 | 1 | OTHER VEHICLE ACCESSORY<br>COLOR: WHITE DESCRIPTION: CHARGER | 1300826958 | 1 |
| 21 | 1 | OTHER ACCESSORY<br>COLOR: BLACK/RED DESCRIPTION: SMALL MAT | 1300826958 | 1 |
| 22 | 5 | OTHER ACCESSORY<br>COLOR: ASSORTED COLORS DESCRIPTION: KEY CHAIN. | 1300826958 | 5 |
| 23 | 1 | OTHER ELECTRONICS<br>COLOR: BLACK MAKE: ALCATEL | 1300826958 | 1 |
| 24 | 1 | KEYS<br>COLOR: GREEN DESCRIPTION: WITH KEY RING | 1300826958 | 1 |
| 25 | 1 | OTHER ACCESSORY<br>COLOR: BLACK DESCRIPTION: PANTS STRING | 1300826958 | 1 |
| 26 | 1 | OTHER KNIVES<br>COLOR: GRAY DESCRIPTION: SCALPEL | 1300826958 | 1 |
| 27 | 1 | OTHER ACCESSORY<br>COLOR: BLACK DESCRIPTION: MAGNETIC STICK | 1300826958 | 1 |
| 28 | 1 | CELL PHONE<br>COLOR: WHITE MAKE: IPHONE DESCRIPTION: MELANIN STICKER | 1300826958 | 1 |
| 29 | 1 | CELL PHONE - ACCESSORIES<br>COLOR: OTHER DESCRIPTION: PHONE CASE | 1300826958 | 1 |

Total Cash Value 0.00

REMARKS

959960 04/02/2022 12:46 : property being vouchered as safekeeping. owner concur.

959960 04/02/2022 15:50 : Invoice Approved By 953617

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 04/01/2022 | 26502/CRIM POSS WEAPON | FELONY | | |
| 04/01/2022 | CPW-2ND: LOADED FIREARM | FELONY | N/A | N/A |

| | Prisoner(s) Name | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | LEGER, ABDOLPH | 08/20/1980 | 41 | 1921 N 7 STREET PHOLADEPHIA, PA 19122 | K22613288 | 15520696R |

Complaint No. 2022-072-001982

Related Comp No.(s) N/A

Aided/Accident No.(s) N/A

Related Invoice(s) N/A

Invoice No. 3001436228

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:05

PCD Storage No.
—

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436228

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | | | 959960 | 072 PRECINCT | 04/02/2022 | 12:46 |
| Invoicing Officer | | | 959960 | 072 PRECINCT | 04/02/2022 | 15:50 |
| Approved By | | | 953617 | 072 PRECINCT | 04/02/2022 | 15:50 |

# NYPD Property Clerk Invoice

PD 521-141(Rev.12/18)

Invoice No. 3001436207

## AVISO A LAS PERSONAS CUYOS BIENES HAN SIDO CONFISCADOS POR EL DEPARTAMENTO DE POLICÍA

La persona a quien se le ha confiscado un bien debe guardar y proteger esta factura. El departamento de policía de la ciudad de Nueva York puede cambiar la categoría de esta factura sin previo aviso. Con el fin de obtener la devolución de bienes, se requerirá que el demandante o representante autorizado por una carta notarizada, presente, en persona, o por correo la factura y la identificación apropiada una (1) identificación con foto expedida por el gobierno, además de por lo menos una (1) identificación sin foto) al Oficial de Propiedad. El demandante exigiendo la devolución de bienes que no sean pruebas de arresto, pruebas de ADN o decomiso, no necesita un Comunicado del Fiscal del Distrito y puede hacer esta demanda si se ha o no iniciado un proceso penal, y si se iniciaron, tales procedimientos han concluido.

## PRUEBA DE ARRESTO, PRUEBA DE ADN/ DECOMISO

El Oficial de Propiedad puede desechar la propiedad de acuerdo a la ley, a menos que el demandante exija la propiedad no más tarde de 120 días después de la culminación del proceso penal. El demandante exigiendo la devolución de pruebas de arresto, pruebas de ADN o decomiso del Oficial de Propiedad, debe obtener previamente un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital negándose a otorgar la entrega. Para hacer una demanda puntual, no se requiere la presentación de uno o ambos documentos al Oficial de Propiedad. Si la demanda de propiedad se hace sin un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital, el demandante tendrá 270 días a partir de la fecha que se hizo la demanda para obtener un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital negándose a otorgar la entrega. Si la comunicación o la declaración negándose a otorgar la entrega no son proporcionadas al Oficial de Propiedad dentro de 270 días a partir de la fecha que se hizo la demanda, la propiedad podrá ser destruida como lo estipula la ley. Si el demandante provee puntualmente el Oficial de Propiedad con un Comunicado del Fiscal del Distrito negándose a otorgar la entrega, y el fiscal del distrito ya no necesita de la propiedad; el demandante debe, obtener y proveer al departamento de policía con un Comunicado del Fiscal del Distrito; la propiedad decomisada puede que adicionalmente requiera de un Comunicado de Ejecución Civil, antes de ser entregada.

## INVESTIGACIÓN / INVESTIGACIÓN DE ADN

La Propiedad de investigación se destruirá después de (1) un año, a menos que la solicite el oficial investigador.

## PROPIEDAD DEL DIFUNTO

Para la entrega de propiedad se requieren Cartas Testamentarias o Cartas de Administración obtenidas en el Tribunal Testamentario del condado de residencia del difunto.

## PROPIEDAD ENCONTRADA

De acuerdo a la ley, propiedad encontrada se retendrá por los siguientes periodos de tiempo (a menos que se le entregó anteriormente al propietario):

a. Propiedad con un valor de menos de $100 — **3 meses**
b. Propiedad con un valor de $100 pero menos de $500 — **6 meses**
c. Propiedad con un valor de $500 pero menos de $5,000 — **1 año**
d. Propiedad con un valor de $5,000 o más — **3 años**

## CUSTODIA

Propiedad retenida como Custodia debe reclamarse dentro de 120 días a partir de la fecha de facturación. Después de los 120 días, la propiedad se destruirá de acuerdo a la ley de NYC aplicable. Todas las armas de fuego, rifles y escopetas facturadas como para su custodia deben ser reclamadas por el propietario dentro de un (1) año a partir de la fecha de facturación. Después de un (1) año de vencimiento, el arma de fuego, rifle o escopeta serán destruidos por el Oficial de Propiedad de acuerdo a la ley, sin previo aviso.

## PROPIEDAD DE VENDEDOR AMBULANTE

La propiedad del vendedor ambulante que se considera de marca falsificada, y se clasifica como propiedad encontrada/abandonada será destruida al ingreso. Cualquier otra propiedad del vendedor ambulante se mantendrá por un periodo de **90 días**. El demandante que exija la devolución de su propiedad de vendedor ambulante debe obtener una carta del Departamento Jurídico del NYPD estableciendo que la propiedad puede ser entregada, y:

a. El demandante que haya recibido una citación de la Junta de Control Ambiental debe obtener una orden de pedido y decisión del ECB.
b. El demandante que haya recibido una citación del tribunal criminal o ha sido arrestado, debe obtener una hoja de decisión del tribunal con el fin de obtener su propiedad de vendedor ambulante.

Por favor traiga este recibo con usted cuando sea notificado a presentarse a reclamar la propiedad. Para información relacionada a la propiedad que usted le entrego a este Departamento; por favor llame a la oficina del Oficial de Propiedad del distrito en la cual la propiedad fue entregada. La oficina del Oficial de Propiedad se encuentran en:

| | | |
|---|---|---|
| **MANHATTAN** | 1 Police Plaza | 646-610-5906 |
| **BRONX** | 215 East 161 St. | 718-590-2806 |
| **BROOKLYN** | 11 Front Street | 718-624-5364 |
| **QUEENS** | 47-08 Austell Place | 718-433-2678 |
| **STATEN ISLAND** | 1 Edgewater Plaza | 718-876-8413 |
| **PEARSON PLACE WAREHOUSE** | 47-15 Pearson Place | 718-361-1021 |

***Tarjetas bancarias / cheques solamente serán proveídos durante las horas de 9:00 AM a 2:30 PM**

Si un vehículo está implicado, contacte al siguiente:

**SPRINGFIELD GARDENS AUTO POUND** 174-20 North Boundary Road, Queens, NY 718-553-9555

Para más información visite el sitio en la red de la División del Oficial de Propiedad al:

**http://www.nyc.gov/html/nypd/html/property_clerk/property_clerk.shtml**

Invoice No. 3001436207

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:08

PCD Storage No.
--
Page No.4 of 4

NYPD Property Clerk Invoice
PD 521-141(Rev.12/18)

Invoice No. 3001436228

## AVISO A LAS PERSONAS CUYOS BIENES HAN SIDO CONFISCADOS POR EL DEPARTAMENTO DE POLICÍA

La persona a quien se le ha confiscado un bien debe guardar y proteger esta factura. El departamento de policía de la ciudad de Nueva York puede cambiar la categoría de esta factura sin previo aviso. Con el fin de obtener la devolución de bienes, se requerirá que el demandante o representante autorizado por una **carta notarizada**, presente, en persona, o por correo la factura y la **identificación apropiada** (una (1) identificación con foto expedida por el gobierno, además de por lo menos una (1) identificación sin foto) al Oficial de Propiedad. El demandante exigiendo la devolución de bienes que no sean pruebas de arresto, pruebas de ADN o decomiso, no necesita un Comunicado del Fiscal del Distrito y puede hacer esta demanda si se ha o no iniciado un proceso penal, y si se iniciaron, tales procedimientos han concluido.

## PRUEBA DE ARRESTO, PRUEBA DE ADN/ DECOMISO

El Oficial de Propiedad puede desechar la propiedad de acuerdo a la ley, a menos que el demandante exija la propiedad no más tarde de 120 días después de la culminación del proceso penal. El demandante exigiendo la devolución de pruebas de arresto, pruebas de ADN o decomiso del Oficial de Propiedad, debe obtener previamente un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital negándose a otorgar la entrega. Para hacer una demanda puntual, no se requiere la presentación de uno o ambos documentos al Oficial de Propiedad. Si la demanda de propiedad se hace sin un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital, el demandante tendrá 270 días a partir de la fecha que se hizo la demanda para obtener un Comunicado del Fiscal del Distrito o una Declaración del Supervisor de la Fiscalía Distrital negándose a otorgar la entrega. Si la comunicación o la declaración negándose a otorgar la entrega no son proporcionadas al Oficial de Propiedad dentro de 270 días a partir de la fecha que se hizo la demanda, la propiedad podrá ser destruida como lo estipula la ley. Si el demandante provee puntualmente al Oficial de Propiedad con un Comunicado del Fiscal del Distrito negándose a otorgar la entrega, y el fiscal del distrito ya no necesita de la propiedad; el demandante debe, obtener y proveer al departamento de policía con un Comunicado del Fiscal del Distrito; la propiedad decomisada puede que adicionalmente requiera de un Comunicado de Ejecución Civil, antes de ser entregada.

## INVESTIGACIÓN / INVESTIGACIÓN DE ADN

La Propiedad de investigación se destruirá después de (1) un año, a menos que la solicite el oficial investigador.

## PROPIEDAD DEL DIFUNTO

Para la entrega de propiedad se requieren Cartas Testamentarias o Cartas de Administración obtenidas en el Tribunal Testamentario del condado de residencia del difunto.

## PROPIEDAD ENCONTRADA

De acuerdo a la ley, propiedad encontrada se retendrá por los siguientes periodos de tiempo (a menos que se le entrego anteriormente al propietario):
a. Propiedad con un valor de menos de $100 — **3 meses**
b. Propiedad con un valor de $100 pero menos de $500 — **6 meses**
c. Propiedad con un valor de $500 pero menos de $5,000 — **1 año**
d. Propiedad con un valor de $5,000 o más — **3 años**

## CUSTODIA

Propiedad retenida como Custodia debe reclamarse dentro de 120 días a partir de la fecha de facturación. Después de los 120 días, la propiedad se destruirá de acuerdo a la ley de NYC aplicable. Todas las armas de fuego, rifles y escopetas facturadas como para su custodia deben ser reclamadas por el propietario dentro de un (1) año a partir de la fecha de facturación. Después de un (1) año de vencimiento, el arma de fuego, rifle o escopeta serán destruidos por el Oficial de Propiedad de acuerdo a la ley, sin previo aviso.

## PROPIEDAD DE VENDEDOR AMBULANTE

La propiedad del vendedor ambulante que se considera de marca falsificada, y se clasifico como propiedad encontrada/abandonada será destruida al ingreso. Cualquier otra propiedad del vendedor ambulante se mantendrá por un periodo de **90 días.** El demandante que exija la devolución de su propiedad de vendedor ambulante debe obtener una carta del Departamento Jurídico del NYPD estableciendo que la propiedad puede ser entregada, y:
a. El demandante que haya recibido una citación de la Junta de Control Ambiental debe obtener una orden de pedido y decisión del ECB.
b. El demandante que haya recibido una citación del tribunal criminal o ha sido arrestado, debe obtener una hoja de decisión del tribunal con el fin de obtener su propiedad de vendedor ambulante.

Por favor traiga este recibo con usted cuando sea notificado a presentarse a reclamar la propiedad. Para información relacionada a la propiedad que usted le entrego a este Departamento; por favor llame a la oficina del Oficial de Propiedad del distrito en la cual la propiedad fue entregada. La oficina del Oficial de Propiedad se encuentran en:

| | | |
|---|---|---|
| **MANHATTAN** | 1 Police Plaza | 646-610-5906 |
| **BRONX** | 215 East 161 St. | 718-590-2806 |
| **BROOKLYN** | 11 Front Street | 718-624-5364 |
| **QUEENS** | 47-08 Austell Place | 718-433-2678 |
| **STATEN ISLAND** | 1 Edgewater Plaza | 718-876-8413 |
| **PEARSON PLACE WAREHOUSE** | 47-15 Pearson Place | 718-361-1021 |

***Tarjetas bancarias / cheques solamente serán proveídos durante las horas de 9:00 AM a 2:30 PM**

Si un vehículo está implicado, contacte al siguiente:
**SPRINGFIELD GARDENS AUTO POUND** 174-20 North Boundary Road, Queens, NY 718-553-9555
Para más información visite el sitio en la red de la División del Oficial de Propiedad al:
**http://www.nyc.gov/html/nypd/html/property_clerk/property_clerk.shtml**

Invoice No. 3001436228

Prisoner/ Finder/ Owner Copy
printed: 04/04/2022 01:05

PCD Storage No.
--

# EXHIBIT B

Allegations on 11-22-2022

Case: 1, Penalty: A - COMMAND DISCIPLINE, FORFEITURE OF TIME/LEAVE BALANCES

| Allegation | Recommendation | |
| --- | --- | --- |
| 01.Wrongfully searched a vehicle. | A-CD, | |



**Records requested from NYPD**

06-15-2021

**Records requested from NYPD**

06-15-2021

**Records requested from NYPD**

06-15-2021

**Records requested from NYPD**

06-15-2021

**Records requested from NYPD**

06-15-2021

**Civilian interviewed**

06-07-2021

**Review by investigation team supervisor**

06-05-2021

**Forwarded to investigative team**

06-02-2021

**Investigation initiated**

06-02-2021

**Registration**

06-01-2021

Back to search page

Menu

Search
File Complaint Complaint Status

# Case # 202103290

**Status**

## Closed

**Incident Date**

## 05-29-2021

**Complaint Date**

## 05-31-2021

**Borough**

## Brooklyn

**Precinct**

## 72

# Case Action

## Closed

**10-17-2022**

## Review by Board Members

**09-06-2022**

Review by investigation team supervisor

09-06-2022

Records requested from NYPD

09-06-2022

Records requested from NYPD

09-06-2022

Review by investigation team supervisor

09-02-2022

Officer interviewed

08-09-2022

Records requested from NYPD

07-08-2022

Officer interviewed

07-01-2022

Officer interviewed

06-29-2022

Records requested from NYPD

04-05-2022

Review by investigation team supervisor

01-13-2022

Records requested from NYPD

11-22-2021

JS 44C/SDNY
REV.
10/01/2020

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

RECEIVED
APR 09 2025
PRO SE OFFICE

PLAINTIFFS
ABDOLPH A LEGER

DEFENDANTS
SEE ATTACHMENT (X)

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Judge Previously Assigned

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [X] Yes [ ]

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date ______________ & Case No. ______________

IS THIS AN INTERNATIONAL ARBITRATION CASE? No [X] Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*

## NATURE OF SUIT

TORTS

ACTIONS UNDER STATUTES

**CONTRACT**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MED MALPRACTICE

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
- [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 448 EDUCATION

**PERSONAL INJURY**
- [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
- [ ] 463 ALIEN DETAINEE
- [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION
- [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 690 OTHER

**PROPERTY RIGHTS**
- [ ] 820 COPYRIGHTS
- [ ] 880 DEFEND TRADE SECRETS ACT
- [ ] 830 PATENT
- [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
- [ ] 840 TRADEMARK

**LABOR**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 740 RAILWAY LABOR ACT
- [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
- [ ] 375 FALSE CLAIMS
- [ ] 376 QUI TAM
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 485 TELEPHONE CONSUM PROTECTION ACT
- [ ] 490 CABLE/SATELLITE T\
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 896 ARBITRATION
- [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIE APPEAL OF AGENCY DE(
- [ ] 950 CONSTITUTIONAL STATE STATUTES

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

DEMAND $__________ OTHER__________ JUDGE ______________________ DOCKET NUMBER__________

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [ ] NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form

(PLACE AN x IN ONE BOX ONLY)

**ORIGIN**

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ a. all parties represented
☐ b. At least one party is pro se.
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from (Specify District)
☐ 6 Multidistrict Litigation (Transferred)
☐ 7 Appeal to District Judge from Magistrate Judge
☐ 8 Multidistrict Litigation (Direct File)

(PLACE AN x IN ONE BOX ONLY)

**BASIS OF JURISDICTION**

*IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

☐ 1 U.S. PLAINTIFF ☐ 2 U.S. DEFENDANT ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY) ☐ 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN

REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or

Check one: THIS ACTION SHOULD BE ASSIGNED TO: ☐ WHITE PLAINS ☑ MANHATTAN

DATE

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[ ] YES (DATE ADMITTED Mo. _______ Yr. _______)
Attorney Bar Code #

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge ________________________________ is so Designated.

Ruby J. Krajick, Clerk of Court by ____________ Deputy Clerk, DATED ________________.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Clear Form Save Print

MLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

ITY®
L

l destinations.

overage.

Package Pickup,
QR code.

M/PICKUP

how2recycle.info

FROM:

ABDOLPH A LEGER
BC: 1132400335
OBCC
1600 HAZEN STREET
E. ELMHURST NY
11370

U.S. ... SDNY

TO:

UNITED STATES COURTHOUSE
PRO SE INTAKE UNIT AT ROOM
120, 500 PEARL STREET
NEW YORK, NY
10007

RECEIVED
APR 09 2025
PRO SE OFFICE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.